THE PEOPLE ex rel. HENRY BRADLEY et al., Respondents, v. THOMAS G. SHAW et al., Composing the Board of Canvassers of the Town of Minerva, Essex County.

The provisions of " The Ballot Reform Act " (Chap. 262, Laws of 1890, as amended by chap. 296, Laws of 1891), providing for the printing of an official ballot at the public expense, do not prevent a voter from voting for any candidate whom he chooses; he may, as provided in the act (§ 25), " write or paste upon his ballot the name of any person for whom he desires to vote for any office," although such person has not received a proper nomination by any political party.

In proceedings by mandamus to compel a board of town canvassers, to reassemble and declare the result of a town meeting, it appeared that the relators were nominated for the several town offices at an independent meeting or caucus, and were voted for by means of paster ballots attached to the official ballots. These ballots had printed upon them the name of the candidate for the office of excise commissioner; they were rejected by the board. *Held*, error; that while, as excise commissioners are required to be voted for on a separate ballot, the votes cast for the candidate for that office could not be counted, the presence of his name on the paster ballots did not vitiate them; that its effect was not to mark or identify the ballot within the meaning of the act; that the relators were entitled to have said ballots counted and declared by the board; and, so, that a peremptory writ was properly ordered.

(Submitted June 8, 1892; decided June 17, 1892.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made May 19, 1892, which affirmed an order of Special Term directing the issuing

of a peremptory writ of mandamus requiring the defendants, who composed the board of canvassers at the annual town meeting held in the town of Minerva, on the 1st day of March, 1892, to re-assemble in said town, as such board of canvassers, and declare the result of said town meeting, allowing for the relators respectively the number of votes cast for them by means of paster ballots, and directing said board to issue a certificate of election to the candidates having the greatest number of ballots cast for them, including such paster ballots.

The facts presented are substantially as follows:

On the 24th day of February, 1892, a caucus or primary was held in the town of Minerva, Essex county, for the purpose of nominating candidates for town offices, and a ticket was nominated. On the evening of the same day, another caucus or primary, called "an independent caucus," was held in the same town, and the relators were nominated for the various town offices. Certificates of both nominations were filed with the town clerk.

A protest was filed with the town clerk against his printing or delivering to the election officers any ballots for the ticket nominated at such independent or second caucus, on the ground that "no votes were cast in the town of Minerva, at the last annual election or town meeting, representing any party, such as required by law, giving them authority to call a caucus to make nominations. Second. The so-called certificate of nomination is not sworn and certified to as required by law and is not proper in form."

The town clerk only delivered to the election officers official ballots containing the names of candidates nominated at the first caucus. · The relators, ascertaining that no official ballots would be distributed with their names on, caused "paster ballots" to be printed; these paster ballots, in addition to the names of the candidates for other town offices, contained the name of their candidate for excise commissioner. The statement of the result shows that 99 ballots were cast for Sullivan, the candidate for supervisor on the regular ticket, the other candidates on his ticket receiving from 96 to 107, and that the

relator Bradley received 110 votes for supervisor, his associates receiving from 107 to 116 votes. The votes for the several candidates on the " Bradley ticket " were all cast by means of the paster ballot before described, the same appearing to have been voted by pasting them on the official ballot containing the names of the candidates on the " Sullivan ticket." The defendants refused to count any of the votes for the Bradley ticket.

*J. W. Houghton* and *John H. Cunningham* for appellants. The relators having proceeded to argument without taking issue upon the allegations of defendants' affidavits, this was equivalent to a demurrer, and an admission of the truth of the facts contained therein. (*People* v. *Suprs.*, 73 N. Y. 173 ; *People* v. *Board of Apportionment*, 64 id. 627; *People* v. *Cromwell*, 102 id. 477; *People* v. *Rome, etc., R. R. Co.*, 103 id. 95.) A peremptory writ will not issue except in a case of clear and unquestioned legal right, and should not be granted on a disputed claim, or where its validity is controverted. (*People* v. *Suprs.*, 11 N. Y. 563 ; *People* v. *Suprs.*, 64 id. 600 ; *People* v. *Wendell*, 71 id. 171; Laws of 1890, chap. 262, §§ 2, 3, 5 ; *People ex rel.* v. *Bd. Canvassers*, 129 N. Y. 420.) It appears uncontradicted that many of the said paster ballots were marked apparently for identification; that some were pasted on the official ballot on the side of the official indorsement and not on the side opposite such indorsement, as required by law; and that all said paster ballots contained the name of an office and a candidate therefor, to wit., the office of excise commissioner and John McArdle, a candidate therefor, which was not on the official ballot, and was contrary to the requirements of section 38 of the Ballot Reform Law. (Laws of 1891, chap. 296.) It is uncontradicted that many paster ballots were pasted on the official ballot on the same side as the official indorsement. It is clear that these ballots were void. (Laws of 1891, chap. 296, §§ 25, 29, 31.) Even if section 31 is capable of the construction that a peremptory mandamus may issue in the first instance where the validity of the ballots are ques-

tioned, it certainly cannot require anything further than a recount of the votes, as specified in the section. And the relators having asked for more than they are entitled to under the statute, the writ should have been denied, and the order granting the same should be reversed. (*People* v. *Cady*, 2 Hun, 224; *People* v. *Green*, 64 Barb. 162; *People* v. *Board of Suprs.*, 1 Hill, 50.) It was error to require the board of canvassers to declare the result of the said town meeting, and to allow for the relators the number of votes cast for them, as stated in the moving affidavits, as some of said ballots were improperly voted. (*People ex rel.* v. *Bd. Canvassers*, 129 N. Y. 469.)

*Foley & Wing* for respondents. There is no force in the objection that relators could not be voted for because they were not put in nomination by any political party, and because no verified certificate of their nomination by a political party was filed with the town clerk. (Laws of 1890, chap. 362, §§ 3, 5, 16, 38.) It was not a valid objection to the granting of the order that the paster ballots cast for relators contained the name of a person for the office of excise commissioner. (Laws of 1890, chap. 362, §§ 31, 38.) The order was properly made notwithstanding the allegation of the opposing affidavits "that a large number of said ballots so voted as a paster ballot were, as deponent believes, defective, irregular and illegal, in that they were not on the side of the official ballot opposite the official indorsement." (*People* v. *Cromwell*, 102 N. Y. 477; *People ex rel.* v. *Assessors, etc.*, 52 How. Pr. 140; *People ex rel.* v. *Paton*, 5 N. Y. S. R. 313; 53 Hun, 254; 77 N. Y. 503, 511; Laws of 1890, chap. 362, § 25.)

GRAY, J. These appellants composed the board of town canvassers for the town of Minerva, and, in proceedings instituted upon the application of these relators, a peremptory writ of mandamus issued, requiring them to reassemble and to declare the result of a town meeting, allowing to the several relators the number of votes cast for them as stated in the

moving affidavits and called "paster ballots," and directing the board to issue a certificate of election to the candidates having the greatest number of ballots cast for them, including such "paster ballots."

The first objection that the relators, having failed to receive a proper nomination by a political party, which at the last election before the holding of the convention or primary meeting polled at least one per centum of the entire vote cast in that political division of the state, for which the nomination is made, could not be voted for, is wholly unsound and without force. The plan contained in sections 2 and 3 of the Ballot Reform Act was a provision for the printing of an official ballot at the public expense; a feature well designed to secure the desired secrecy and independence of the ballot. But that it was in no wise intended to prevent the voter to vote for any candidate whom he chose, is evident from the further provisions of the law (§ 25) that "the voter may write or paste upon his ballot the name of any person for whom he desires to vote for any office." Indeed, to hold otherwise would be to disfranchise, or to disqualify, the citizen, as a voter or a candidate, and, in my opinion, to affect the law quite unnecessarily with the taint of unconstitutionality in such respects.

The interesting and more important question in the case relates to the effect which the presence upon the paster ballot of the name of the office of excise commissioner, and of the name of the candidate therefor, had upon the ballots cast for the relators. Being upon the ballot officially indorsed and to be cast for town officers other than excise commissioners, who, under the Ballot Law, are to be voted for upon a separate ballot and in a separate box, of course, they could not be counted as votes for the candidate for excise commissioner; but it was argued that the effect upon the ballot was to mark or identify it, and to subject it to the condemnation of the law. The relators, who were nominated for the several town offices at an independent meeting, or caucus, were obliged to have paster ballots printed at their own expense, for use at the polls. All of these paster ballots had printed upon them the name of

the candidate for the office of excise commissioner, and if that was a fact which made the ballot a marked one, within the meaning of the Ballot Law, then every one of the ballots printed for this independent ticket and for the use of its supporters, was vitiated. The effect of this appearance upon the paster ballots, however, was not for consideration in this proceeding, otherwise than as to whether it constituted any reason for rejecting them in counting the votes and declaring the result.

The case, upon the affidavits presented, quite warranted the issuance of the writ in question. Aside from the grounds stated in the opposing affidavits for defeating the relators' application, which concerned the legality of the mode by which the relators were put in nomination, all that was urged against the " paster ballots " cast for them was that they were defective " in that they contained the name of an office and a candidate therefor that was not upon the official ballots, and could not be properly on the same ticket with the other town officers, etc."

That was, in substance, a claim that these paster ballots were illegal and could not be counted. There was no conflict as to the number or description of these paster ballots and each bore the proper official indorsement entitling it to be deposited. The protest, which was filed by the appellants and which appears in the case, was upon the sole ground that no names for any office should be counted unless they were such as had received a legal nomination, properly certified to the clerk.

We think that by a proper reading and construction of the Ballot Law it was the duty of the inspectors to have counted the ballots in declaring the result of the election and that any objection to them, upon the ground that they were marked ballots within the meaning of the act, could not be determined in this proceeding. The question before the court, upon the application of these relators, was purely one of law on a conceded state of facts and one which it was competent and proper for the court to decide upon the hearing. It went solely to the right of the relators to have the paster ballots counted and declared by the board of canvassers in stating the

result of the town election. The particular feature objected
to in these paster ballots suggested no ground for their rejec-
tion under the election law, and there was no other question
properly before the court in this proceeding. These ballots
should, therefore, have been counted by the board and, because
of their rejection, the peremptory writ of mandamus was
properly ordered to be issued.

No other questions call for any review by us and the order
appealed from should be affirmed, with costs.

All concur, except FINCH, J., not voting.

Order affirmed.