THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE H. BUSH, APPELLANT, v. THE BOARD OF COUNTY CANVASSERS OF ULSTER COUNTY, RESPONDENT.

66 265
43ap315

THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE H. BUSH, APPELLANT, v. HENRY E. McKENZIE AND OTHERS, RESPONDENTS.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE H. BUSH, APPELLANT, v. ROBERT H. FAIR-BROTHER AND OTHERS, RESPONDENTS.

*Elections — ballots — objection to, as marked for identification — mandamus.*

A peremptory writ of *mandamus* should not issue, under section 31 of chapter 262 of the Laws of 1890, as amended by chapter 296 of the Laws of 1891 (an act "to promote the independence of voters at public elections," etc.), where it does not affirmatively appear that an inspector of election, or other election officer or duly authorized watcher, during the canvassing of the votes, or immediately after the completion thereof, declared his belief that the ballots objected to, on the motion for such writ, were marked for the purpose of identification.

Although a proceeding, under said section, in which the facts, whether objection was made to certain marked ballots at the time of the canvass, or, if not made, whether the marked ballots were voted, and, if voted, whether they were marked for identification, are disputed, might call for the issuance of an alternative writ of *mandamus*, if applied for, yet such relief cannot be granted where the application is for a peremptory writ.

The argument by the relator, on a motion for a peremptory writ of *mandamus*, of questions raised by conflicting affidavits, is in the nature of a demurrer to the legal sufficiency of the opposing proof, and an alternative writ will not then issue.

Where ballots cast at an election and which should have been destroyed, no objection having been made to them as marked for identification, have been preserved in violation of law, and have been, since the completion of the canvass, out of the possession of the election officers and exposed to the risk of being tampered with, they should not thereafter be allowed to be attached to the statement of the canvass.

Where it appears that ballots cast at an election were not marked during the canvass or immediately thereafter, as objected to because marked for identification, or with words in substance to that effect, as required by the statute, neither the board of inspectors, nor a member thereof with its permission, can thereafter attach to the statement of the canvass theretofore filed with the board of canvassers ballots alleged to have been marked for identification, and indorse thereon that they were returned, as objected to because marked for identification; and ballots, so attached to the statement of the result of the canvass after the statement was originally filed, must be removed therefrom before such statement is canvassed by the board of county canvassers.

APPEALS by the relator, George H. Bush, from three several orders made at a Special Term of the Supreme Court, entered in the office of the clerk of the county of Ulster on the 25th day of November, 1892, which orders denied his motions for writs of peremptory *mandamus* in one case against the Board of County Canvassers of Ulster County, in another against the Board of Election Inspectors of District Number One, and in the other against the Board of Election Inspectors of District Number Two of the Town of Esopus, Ulster County, respectively, except that portion of such orders staying said board of canvassers, and staying proceedings under said order.

Section 31 of chapter 262 of the Laws of 1890, entitled "An act to promote the independence of voters at public elections, enforce the secrecy of the ballot, and provide for the printing and distribution of ballots at public expense," as amended by chapter 296 of Laws of 1891, is as follows:

"The votes for the several candidates shall be canvassed in the order in which they appear upon the several ballots. No ballot that has not the printed official indorsement shall be counted, except such as are voted in accordance with the provisions of section twenty-one of this act. All ballots that are defective in whole or in part

PEOPLE ex rel. BUSH v. COUNTY CANVASSERS. 267

Third Department, November Term, 1892.

shall be marked 'defective,' and shall be preserved and filed as provided for in section twenty-seven of this act. When an inspector of election or other election officer or duly authorized watcher shall, during a canvass of the votes, or immediately after the completion thereof, declare his belief that any particular ballot or paster affixed thereto has been written upon or marked in any way with the intent that the same may be identified, the inspectors shall write their names on the back thereof and attach it to the original certificate of canvass, and include in said certificate a statement of the specific grounds upon which the validity of such ballot is questioned. When the votes are to be estimated and the result declared by a board of county canvassers or other officers performing similar duties, such board or officers shall mention separately in the statement or certificate of canvass the number of votes thus questioned which were cast for each candidate, and the specific grounds upon which the same are claimed to be invalid as set forth in the original certificate of canvass. Such ballots shall be counted in estimating the result of an election; but within thirty days after the filing of the certificate declaring such result a writ of *mandamus* may issue out of the Supreme Court against the board of canvassers, or officers acting as such board, by whom the ballots were counted, upon the application of any candidate voted for at the election to require a recount of the votes, and all questions relating to the validity of such ballots, and as to whether they were properly counted shall be determined in such proceeding. All such ballots shall be preserved for at least one year, and until the questions raised by such writ shall be finally determined. Election boards and boards of canvassers shall be continued in existence for the purposes of such proceedings."

*J. Newton Fiero*, for the relator.

*John J. Cloonan*, for board of canvassers.

*G. D. B. Hasbrouck, Charles F. Cantine* and *Severyn B. Sharpe*, for the defendants.

Putnam, J.:

The order should be affirmed on the opinion of the court below. The relator was not entitled to an alternative writ of *mandamus*. (*People ex rel. Hartford L. Ins. Co.* v. *Fairman*, 91 N. Y., 387.)

Order affirmed, with ten dollars costs and printing.

268 PEOPLE ex rel. BUSH *v.* COUNTY CANVASSERS.

THIRD DEPARTMENT, NOVEMBER TERM, 1892.

MAYHAM, P. J.:

I concur with the conclusion of the learned judge at Special Term, that a peremptory writ of *mandamus* should not issue in these cases, because it does not affirmatively appear that " an inspector of election or other election officer, or duly authorized watcher," during the canvassing of the votes or immediately after the completion thereof declared his belief that the ballots objected to on this motion were marked for the purpose of identification as required by section 31 of chapter 262 of the Laws of 1890, as amended by chapter 296 of the Laws of 1891.

It is only when such objection is made that this summary proceeding can be adopted. But the failure to make such objections and thus lay the foundation for this summary proceeding does not render a ballot marked for indentification a valid vote, but the statute makes such ballot absolutely void, and no neglect on the part of the inspectors or watchers should be permitted to give validity to a vote denounced by the law as void.

In this case it is positively asserted that these ballots were marked, but the respondent disputes their validity and denies positively that they were objected to at the time of the canvass. Here is a sufficient dispute as to the facts to authorize the issuance of an alternative *mandamus*, if a motion for an alternative writ had been made.

In the *People* v. *Board of Canvassers of Dutchess County*, EARL, J., says: " A candidate intending to proceed by *mandamus*, under section 31, should procure an alternative writ so that, if there should be any dispute about the facts, that can be settled before the peremptory *mandamus* issue."

I think, in this case, an alternative writ, if applied for, should have issued, so that the facts in dispute, to wit, whether objection was made, or, if not made, whether the marked ballots were voted, and, if voted, whether they were marked for the purpose of identification could be tried as questions of fact.

But the relator in this case cannot have that relief on this motion, as his argument of the questions involved on the conflicting affidavits is in the nature of a demurrer to the legal sufficiency of the opposing proof (*People ex rel. Hartford L. Ins. Co.*, 91 N. Y., 387); and when that is done the alternative writ will not issue.

HERRICK, J., not acting.

Orders affirmed on opinion of Special Term, with ten dollars costs and printing and other disbursements in each case.

The following is the opinion delivered at the Special Term:

HERRICK, J.:

These are motions for writs of peremptory *mandamus* to the above-named defendants.

The applications are made upon the affidavit of the relator, who was a candidate for member of assembly at the recent general election; he states that at such election there were in the First Election district of the town of Esopus, in Ulster county, fifteen paster ballots, pasted upon the official ballots furnished for use at said district at said election, each and every one of which paster ballots was marked either by the person who cast the said ballot, or by some other person, for the purpose of having the same identified; that said paster ballots contained the names of the candidates of the Republican party for the several offices to be voted for at said election; that upon each of such paster ballots there was pasted a paster ticket upon which was printed the name of William Luby a candidate for coroner. In one of the above cases he is described in the moving affidavits as the Democratic, and in the other as the Republican, candidate for coroner. It is further alleged that some of the paster tickets containing the name of said William Luby were pasted upon the paster ballots, upside down, and the corner of each was cut off at a sharp angle. The same state of facts is alleged as to district No. 2, except the pasters were eleven in number and each one is alleged to have been pasted upside down upon the paster ballots.

The relator further states, upon information and belief, that during the canvass, or immediately after its completion, some of the election officers or authorized watchers declared his or their belief that such paster ballots had been marked for the purpose of identification. He also alleges that the inspectors of election, or some of them, knew and believed that such ballots had been marked for identification; but that, notwithstanding such knowledge and declarations, the said inspectors did not write on the back of such ballots the words, " objected to because marked for identification," or any mark, in substance, to that effect, and did not in any way designate said

270 PEOPLE ex rel. BUSH v. COUNTY CANVASSERS.

THIRD DEPARTMENT, NOVEMBER TERM, 1892.

ballots or sign their, or any of their, names thereto; that they did not attach any of said ballots to their statement of canvass, or to the certified copies thereof, but that they kept said ballots, and now have them, in their possession.

Upon that statement of facts he asks that the inspectors of election be directed to "reconvene and attach to their statement of the canvass of said district, * * * or to the certified copy thereof, * * * the said marked ballots now in the possession of them, or any one of them, with the statement as required by law, that the counting of said ballots was objected to." And in the proceedings against the board of county canvassers it is asked that such board allow the inspectors of election to attach to their statement of canvass the marked ballots referred to, and that, in the meantime, such board be forbidden from canvassing the statements from such election districts. It will thus be seen that the question for the court to determine upon this motion is not whether the ballots were, in fact, marked for identification, but whether the inspectors of election should correct their statements of canvass by attaching to them the ballots that the relator claims were marked for identification. The court will only compel the inspectors to do what it was their duty to have done.

The law provides as follows: "When an inspector of election or other election officer or duly authorized watcher shall, during a canvass of the votes, or immediately after the completion thereof, declare his belief that any particular ballot, paster or paster ballot affixed thereto has been written upon or marked in any way for the purpose of identification, the inspectors or canvassers shall write on the back of such ballot the words 'objected to, because marked for identification,' or words, in substance, to that effect, and sign their names thereto, and attach each such ballot to their written statement of the result of the canvass." (Laws of 1892, chap. 680, § 114.)

The first thing to be done then to authorize the inspectors to attach the ballots to the statement of result is, that some election officer or watcher shall declare his belief that the ballot has been marked for identification; unless that is done they are neither authorized nor required to attach such ballots to the statement.

It was held in *People ex rel. Bradley* v. *Shaw and others* (133 N. Y., 493) that where the objection was not taken before the board

PEOPLE ex rel. BUSH *v.* COUNTY CANVASSERS. 271

Third Department, November Term, 1892.

of town canvassers that the ballots were marked for identification the court could not consider that objection afterwards. That was a case where, upon a paster ballot for town officers, there was also printed the name of the office of excise commissioner and of the candidate therefor ; the objection was made that they were defective " in that they contained the name of an office and a candidate therefor that was not upon the official ballots, and could not be properly on the same ticket with the other town officers." Subsequently it was claimed that they were marked ballots, but the court held that that question was not before it.

The relator says he is informed and believes that such objection, or rather expression of belief was made; and his allegation upon information and belief is all that appears before me to show that such necessary objection was made.

On the part of the defendants there is presented, as to district No. 1, the affidavits of one of the inspectors, two watchers, a poll-clerk and a ballot-clerk, and, as to district No. 2, the affidavits of one inspector, two poll-clerks, one ballot-clerk and a watcher, all swearing positively that they were present during the canvass of the votes polled in their respective districts, and that no inspector of election, election officer or watcher declared his belief that any ballot or paster or paster ballot had been written upon or marked for identification. And they also swear that no ballots were marked with the words " objected to, because marked for identification," or words, in substance, to that effect. Under such circumstances, where there is on the one side but a single affidavit, and that upon information and belief, and opposed to it that of so many persons who were in a position to have personal knowledge, and who swear positively to the contrary, I am compelled to hold that, as a matter of fact, no objections were made at the time of the canvass of the votes, or immediately thereafter, that such ballots were marked for identification. But counsel for the relator says that the object of the statute was to have the ballots preserved for the court to act upon, and that, as the ballots have been, in fact, preserved, its object has been accomplished, although in an irregular manner ; that the law should be liberally construed. The law should be liberally construed to effect its purposes, among other things, to promote honest elections and an honest declaration of the result. To sanction a

272 PEOPLE ex rel. BUSH v. COUNTY CANVASSERS.

Third Department, November Term, 1892.

practice such as is contended for here would, it seems to me, open the door to fraud and sharp practice, instead of promoting an honest declaration of the result.

The ballots, it appears, have been preserved. They have been preserved in violation of law. Having been voted, and no objection having been made to them as marked for identification, they should have been destroyed. (Laws of 1892, chap. 680, § 115.)

In providing for the preservation of ballots challenged as marked for identification, the law has provided certain safe-guards to identify the ballots and prevent imposition and fraud. In addition to having written upon them the words heretofore mentioned, it also requires that each inspector shall sign his name thereto; the purpose of this is obvious. None of these safeguards appear in this case.

The ballots were preserved, but how; they were, as appears from the affidavits, left in public places, apparently in the buildings where the elections were held in the respective districts, the inspectors did not keep them in their personal possession. The danger of such action is obvious. Strangers could obtain possession of them, tamper with them, mutilate or mark them. Ballots not objected to at the time of being canvassed; preserved in violation of law; out of the possession of the officers; exposed to the dangers I have suggested, I do not think should now be attached to the statement of the canvass. A construction of the law that would permit it, would be lax not liberal; it would invite sharp practice. I do not mean to intimate that there has been any in this case, but if the procedure contended for is sanctioned now it invites sharp practice, and tampering with the ballots hereafter. In fact, the only inspector sworn from district No. 2 swears that no such ballots, as above described, were voted in his district.

It appears that since the proceedings were commenced the chairman of the board of inspectors in each of said districts, by permission of the board of canvassers, attached to the statement of canvass theretofore filed with the board ballots of the kind in question, alleged to have been marked for identification, and indorsed thereon in substance that they "were returned as objected to because marked for identification." There had been no meeting of the several boards of inspectors, authorizing any such action to be taken, and it appears to have been the individual action of the chairman.

As we have seen, the affidavits showed that the ballots were not marked during the canvass, or immediately thereafter, as objected to because marked for identification or with that in substance. That was the only time when such action could be legally taken.

The proceeding was wrong. There is no authority in law for it. A single inspector cannot act for the whole board; and under the facts, as they now appear, the board itself would have no right to do what a single member of it has assumed to do. The alleged marked ballots so attached to the statements of result, since they were orignally filed, must be removed from such statements before being canvassed by the board of canvassers.

The several motions must be denied, with ten dollars costs in each proceeding. Let orders be entered accordingly.