SHIELDS H. SANNER

*v.*

ROBERT A. PATTON.

*Filed at Springfield April 2, 1895.*

1. ELECTIONS—*construction of Ballot law of 1891—voter may write in name.* Votes cast for a person not nominated for office in any of the ways provided by statute, but whose name, not being printed upon the official ballot, was written by each voter in a blank space upon the same and marked with a cross, are legal votes under the Ballot act of June 22, 1891, and should be counted by the judges.

2. SAME—*addition of names does not invalidate official ballot.* The addition of the names of one or more candidates to a ballot by the voter does not destroy the official indorsement on the ballot or render the same illegal, under the provisions of the Ballot act

that no ballot without such official indorsement shall be deposited in the ballot box, and none but ballots printed in accordance with its provisions shall be counted.

3. SAME—*right of suffrage guaranteed by the constitution.* Section 1 of article 7 of the constitution guarantees to every male citizen having the qualifications therein named, the right to vote, and, in doing so, to exercise his own choice, and the legislature possesses no power to either directly or indirectly restrict that right, except in the case of those convicted of infamous crimes.

APPEAL from the County Court of Shelby county; the Hon. TRUMAN AMES, Judge, presiding.

MOULTON, CHAFFEE & HEADEN, for appellant :

Article 7, section 1, of the constitution of 1870, is the foundation for all laws as to the qualifications of legal voters. The Australian ballot law should be construed in subordination to the constitution. ‘ *Bowers* v. *Smith,* 35 Cent. L. J. 305.

The rule is well and rightly settled in this State on the counting of ballots. The intention of the voter should be ascertained, and when ascertained it must control. *McKinnon* v. *People,* 110 Ill. 305 ; *Bowers* v. *Smith,* 35 Cent. L. J. 305.

The intention of the voter is to be followed under the Australian law, even if not expressed in conformity to the statute. Am. Dig. 1893, 1642, par. 99.

We have no access to the New York statute, but understand it to be a rule of construction (not the statute itself) that permits a paster to be put on an official ballot. Am. Dig. 1893, 1642, par. 105 ; *Kreitz* v. *Behrensmeyer,* 125 Ill. 141; *State ex rel.* v. *Foster,* 38 Ohio, 604; *Haines* v. *Miller,* 56 Iowa, 395 ; *Strong* v. *Petitioner,* 20 Pick. 494.

Irregularities will not disfranchise voters. 6 Am. & Eng. Ency. of Law, 325, 343 ; *Bowers* v. *Smith,* 35 Cent. L. J. 305.

Courts will not hold a provision of law mandatory unless it is clearly of such a character that its violation will tend to prevent a correct determination of the result

of the election, unless it is declared in the law that its violation shall render the election void. 6 Am. & Eng. Ency. of Law, 325 ; *Bowers* v. *Smith*, 35 Cent. L. J. 305.

The clauses in this law providing that only certain persons shall be entitled to have their names on the official ballot, are wise regulations to restrain the number of ballots to be distributed within reasonable limits. *Bowers* v. *Smith*, 35 Cent. L. J. 305.

A voter may exercise the right to erase the names of candidates on the ticket and insert names of persons who stand for entirely different principles. Am. Dig. 1892, 1621-22, pars. 10, 12, 14; *Ripple* v. *Lackawana County*, 30 W. & C. 120.

The voter's choice is not limited to those nominated. Am. Dig. 1892, 1627, par. 50; 1630, pars. 71-73.

HAMLIN & KELLEY, for appellee :

The safe and established rule of construction is, that the intention of the law-maker and the meaning of the law are to be discovered and deduced from a view of the whole and of every part of a statute, taken and compared together. *Mechanics' Savings Inst.* v. *Givens*, 82 Ill. 157; *People* v. *Canal Comrs.* 3 Scam. 153 ; Potter's Dwarris on Statutes, 188, 194; 1 Kent's Com. 462; *Biggs* v. *Clapp*, 74 Ill. 335.

If the same words occur in different parts of a statute, they will generally be taken to have been everywhere used in the same sense. Potter's Dwarris on Statutes, 194.

In giving a construction to the words used in a statute many things are to be kept in view, such as the object or purposes of the act, and the consequences that will probably result from the proposed construction. *Gormley* v. *Uthe*, 116 Ill. 643 ; Potter's Dwarris on Statutes, 212, 213.

The word "candidate" is defined in Rapalje & Lawrence's Law Dictionary, as follows : "A nominee ; one who aspires to an office, or who is selected or offers him-

self as a proper person to be elected to an office ; so, also, one who seeks a nomination or an appointment is said to be a candidate for such nomination or appointment." Vol. 1, 166.

There is nothing in the record to show that Shields H. Sanner, at the time of said election, was a candidate, in any sense.

Statutes prescribing the form of a ballot will generally be construed mandatory, and this will be so in all cases where the statutes provide that a ballot varying from the requirements of the law shall not be counted. 6 Am. & Eng. Ency. of Law, 325, 327, 349 ; *County of Union* v. *Ussery*, 147 Ill. 204.

In many cases the intention is apparent, but still the ballot must be rejected for non-compliance with the statute. *People ex rel.* v. *Hansen*, 150 Ill. 102 ; *County of Union* v. *Ussery*, 147 id. 294; Mechem on Public Offices, chap. 5, sec. 191; *People* v. *Township Board*, 14 Mich. 28.

It is a maxim, generally true, that if an affirmative statute, which is introductory of a new law, directs a thing to be done in a certain manner, that thing shall not be done in any other manner, even though there be no negative words. *Diversey* v. *Smith*, 103 Ill. 378; Potter's Dwarris on Statutes, 72.

When a statute points out a particular course to be pursued to effect a particular purpose, no other course can lawfully be pursued. *Lock* v. *Davison*, 111 Ill. 378 ; *County of Hardin* v. *McFarlan*, 82 id. 138.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a proceeding instituted by Shields H. Sanner, in the county court of Shelby county, to contest an election for the office of commissioner of highways of the town of Penn, held on the third day of April, 1895, whereby Robert A. Patton had been declared elected. The defendant, Robert A. Patton, put in an answer to the petition, and on the hearing, on the pleadings and

evidence, the court entered a judgment dismissing the petition.

The record in this case shows that Robert A. Patton, the appellee, was nominated for the office of commissioner of highways and his name placed upon the official ballot; that Sanner's name was not printed or placed on the official ballot, and that no ballot containing his name was furnished the voters at said election. It is expressly stipulated in the record that Patton was the only person nominated as candidate for such office; that Shields H. Sanner was not nominated for said office by any of the modes prescribed by statute; that only one ticket was prepared and printed by the town clerk, as follows:

## ◯ Republican

☐ For Town Clerk,
  JOHN L. GREGORY.

☐ For Assessor,
  JAMES G. THOMPSON.

☐ For Collector,
  WELLS M. BECK.

☐ For Commissioner of Highways,
  R. A. PATTON.

☐ For Justices of the Peace,
  E. B. CUTLER,

☐   IRA T. BAIRD.

☐ For Constables,
  D. R. CUTLER,

☐   E. T. ROBISON.

Endorsement: "Official ballot of annual town meeting of Penn township, Shelby county, Illinois, April 3, 1894. R. BUND, Town Clerk."

At the election forty-two ballots were cast. Sixteen of the forty-two contained a cross in the large circle on the ticket opposite the word "Republican," and they were counted for Robert A. Patton. One ballot had no mark

in the large circle, but contained a cross in each of the blocks opposite all the names on the ticket, except the first one. It also appeared that twenty-five ballots were rejected by the judges of election, being in the same form as the seventeen above referred to; that twenty-three had the name of S. H. Sanner written under the name of R. A. Patton, in the blank space between Patton's name and the words "For Justice of the Peace," and a block and X therein was placed at the left of Sanner's name.

It was stipulated on the trial that the twenty-five ballots were rejected by the judges of election because the name of Sanner was written on the ballots for the office of commissioner of highways, the judges holding that a voter had no right to write Sanner's name on an official ticket, for the reason he had not been nominated, and that by so doing the ticket was void, and should be rejected by the judges of election in canvassing the votes.

Whether a voter has the right, under the act of June 22, 1891, (Laws of 1891, p. 108,) to write the name of some person for whom he desires to vote for an office to be filled at the election, on the official ballot provided for the voter at public expense, and vote for such person, or whether he is confined to the names printed on the official ballot, is a question not entirely free from difficulty. The first section of the act provides: "That in all elections hereafter to be held in this State for public officers, except for trustees of schools, school directors, members of boards of education, officers of road districts in counties not under township organization, the voting shall be by ballots printed and distributed at public expense, as hereinafter provided, and no other ballots shall be used." Section 2 provides how the printing and delivery of ballots and cards of instruction shall be paid for. Sections 3, 4 and 5 provide how candidates may be nominated. Section 6 provides what the certificates of nomination, or nomination papers, shall contain. Section 7 provides with whom certificates of nomination shall be filed. Sec-

tion 8 provides a mode by which a candidate may with-
draw his name. Section 9 points out the method of filling
a vacancy. Section 10 relates to the settlement of objec-
tions made to nominations. Sections 11 and 12 relate to
filling vacancies and supplying new ballots. Section 13
requires the Secretary of State to certify, within a speci-
fied time, to the county clerk of each county within which
any of the electors may by law vote for candidates for
office, the name and description of each person nominated,
as specified in the certificate of nomination. Section 14
provides : "The names of all candidates to be voted for
in each election district or precinct shall be printed on
one ballot, all nominations of any political party or
group of petitioners being placed under the party appel-
lation or title of such party or group, as designated by
them in their certificates of nomination or petitions, or if
none be designated, then under some suitable title, and
the ballot shall contain no other names, except that in
case of electors for president and vice-president of the
United States the names of the candidates for president
and vice-president may be added to the party or political
designation. * * * On the back or outside of the bal-
lot * * * shall be printed the words 'official ballot,'
followed by the designation of the polling place for which
the ballot is prepared, the date of the election, and a *fac
simile* of the signature of the clerk or other officer who has
caused the ballots to be printed. The ballots shall be of
plain, white paper, through which the printing or writing
cannot be read. The party appellation or title shall be
printed in capital letters, not less than one-fourth of an
inch in height, and a circle one-half inch in diameter
shall be printed at the beginning of the line in which
such appellation or title is printed. The names of can-
didates shall be printed in capital letters not less than
one-eighth nor more than one-fourth of an inch in height,
and at the beginning of each line in which a name of a
candidate is printed a square shall be printed, the sides

of which shall not be less than one-fourth of an inch in length. The list of candidates of the several parties and groups of petitioners shall be placed in separate columns on the ballot, in such order as the authorities charged with the printing of the ballots shall decide." Section 15 relates to the printing and furnishing of the ballots. Section 20 provides that the judges of election of their respective election districts shall have charge of the ballots, and furnish them to the voter on the day of election. Section 23 provides as follows: "On receipt of his ballot the voter shall forthwith, and without leaving the enclosed space, retire alone to one of the voting booths so provided, and shall prepare his ballot by making in the appropriate margin or place a cross (X) opposite the name of the candidate of his choice for each office to be filled, or by writing in the name of the candidate of his choice in a blank space on said ticket, making a cross (X) opposite thereto. * * * *Provided, however,* if he shall desire to vote for all of the candidates of one political party or group of petitioners, he may place such mark at the appropriate place preceding the appellation or title under which the names of the candidates of such party or group of petitioners are printed, and the ballot, so marked, shall be counted as cast for all of the candidates named under that title: *Provided further,* that the voter may place such mark at the appropriate place preceding the appellation or title of one party or group of petitioners, and may also mark at the appropriate place preceding the name or names of one or more candidates printed under the appellation or title of some other party or group of petitioners, and a ballot so marked shall be counted as cast for all the candidates named under the appellation or title which has been so marked, except as to the officers as to which he has placed such mark preceding the name or names of some other candidate or candidates printed under the title of some other party or group of petitioners, and as to such it shall be counted

as cast for the candidate or candidates preceding whose name or names such mark may have been placed."

It is apparent from section 1 of the act that all ballots to be used at an election are required to be printed and furnished at public expense, and the use of all other ballots is absolutely prohibited, and if no other section of the act permitted the voter to change the ballot by inserting the name of some person whose name did not appear on the ticket so furnished, we would be inclined to hold that the voter would be compelled to vote the ticket as it was furnished to him, or be denied the privilege of voting for any person whatever. There are, however, other sections of the act which, when considered in connection with section 1, would seem to indicate that the legislature never intended to restrict the voter to the persons whose names were printed on the official ballot. Section 21 of the act requires the officers upon whom the duty is imposed of providing polling places, to provide a sufficient number of booths, and the booths shall be furnished with shelves, pens, penholders, ink, blotters and pencils, so as to enable the voter to prepare his ballot for voting. Each booth is required to be three feet square, and contain a shelf one foot wide, at a convenient height for writing. If the voter, when he receives a ballot and enters the booth, has no authority to write the name of a candidate on the ticket, and can do nothing but take a ballot and make a cross in the circle, or a cross opposite the names of such persons on the ticket as he may wish to vote for, no necessity exists for a shelf to write upon, or for ink, pens and blotters. If the voter is permitted to do nothing but make a cross on the ticket, as indicated, he can do this with a pencil in a moment, and no necessity exists for the writing material required to be furnished.

But, independently of this section, we think section 23, which points out the mode or manner of voting after the voter receives the ballot, clearly confers upon the

voter the power to insert in the ballot the name or names of such person or persons as he may desire to vote for for any office to be filled at the election, and vote for such persons. Upon an examination of this section it will be seen that if the voter desires to cast his vote for all the candidates of one political party whose names appear on the ticket, he may do so by merely making a cross in the circle printed on the ticket opposite the name of the political party, and a vote of this character will be counted for all the candidates on that ticket. There is another mode : If the voter does not desire to vote for all the candidates whose names appear on the ticket of the political party to which he belongs, he may put a cross in the circle opposite the name of his political party and then make a cross opposite the name of any candidate on any one of the other tickets for whom he may desire to vote, and the ballot will be counted for any candidate before whose name the cross thus appears, and with this exception it will be counted for those candidates appearing below the circle containing the cross. There is yet another mode, which, in the language of section 23, is as follows : "The voter shall prepare his ballot by marking in the appropriate margin or place an X opposite the name of the candidate of his choice for each office to be filled, or by writing in the name of the candidate of his choice in a blank space on said ticket, making an X opposite thereto." Under this clause the voter may pay no attention whatever to the circle, but may place a cross opposite the name of any candidate whose name may be found on the ballot for whom he desires to vote, and the ballot shall be counted for such candidate, or he may write the name of a candidate on the ballot and place a cross opposite the name, and the ballot shall be counted for such person.

It is claimed that section 14 prohibits the voter from writing on the ballot the name of a person who has not been nominated. That section, as has been seen, in sub-

stance declares that the names of all persons to be voted for shall be printed on one ballot, all nominations of any political party being placed under the party appellation, as designated in the certificates of nomination, and the ballot shall contain no other name. This section has reference to the duty of those entrusted with preparing the ballots to be placed in the hands of the judges of election, to be used by the voter on the day of election; but after the ballot has been prepared and placed in the hands of the judges of election, whether the voter may or may not add the name of a candidate to the ballot is a question upon which the section is silent.

Some importance is sought to be attached to section 26 of the act, which, in substance, provides that no ballot without the official endorsement shall be allowed to be deposited in the ballot box, and none but ballots provided in accordance with the provisions of this act shall be counted. As to this provision, it is sufficient to say that the addition of the name of one or more candidates to a ballot by the voter does not destroy the official endorsement on the ballot, nor does the change render the ballot one prepared contrary to the provisions of the act. On the other hand, the ballot, after the change, still retains the official endorsement and is still a ballot prepared at public expense, as contemplated in the act.

It is also said that ample provision has been made in the act whereby candidates may be nominated, and thus be entitled to have their names placed on the ticket, and that it is the intention of the act that no vote should be cast for a person who was not nominated. If such was the intention, why did not the legislature say so, and why did it say directly the contrary? What, it may be asked, is there so sacred in the nomination of a candidate for office by a political caucus that a voter should be compelled to vote for a nominee of the caucus or else be deprived of the elective franchise? Under section 1, article 7, of our constitution, every male citizen of the

United States above the age of twenty-one years, who has resided in the State one year, in the county ninety days and in the election district thirty days next preceding any election, is entitled to vote at such election. To exercise this right there is one exception, and but one, so far as we have been able to find; and that is found in section 7 of the same article, which declares that the General Assembly shall pass laws excluding from the right of suffrage persons convicted of infamous crimes. Adopting the well known maxim or rule of construction that the expression of one thing is to be regarded as the exclusion of another, the legislature does not possess the power to take away from a resident citizen the right of suffrage unless he has been convicted of an infamous crime. Nor can the legislature do indirectly what they cannot do directly, and yet, if the construction contended for by appellee be the correct one, the voter is deprived of the constitutional right of suffrage. He is deprived of the right of exercising his own choice, and when this right is taken away there is nothing left worthy of the name of the right of suffrage—the boasted free ballot becomes a delusion.

It will not be necessary to extend the discussion. We are satisfied that the legislature, when they adopted that part of section 23 which authorizes the voter to write the name of the candidate of his choice in a blank space on the ticket, making a cross opposite thereto, did so advisedly, and for the purpose of preserving the right of suffrage which belongs to the voter. Other States have enacted similar laws. In the Supreme Court of Missouri, where a law of this character was under consideration, in *Bowers* v. *Smith*, 17 S. E. Rep. 761, it is among other things said: "By our constitution general elections are to be held at certain fixed times, and the right of suffrage is secured to every citizen possessing the requisite qualification. The new law cannot impinge upon the right of voters to select their public servants at such elections,

or be so interpreted as to limit the range of choice for constitutional officers to persons nominated in the modes prescribed by it. Nominations under it entitle the nominees to places upon the official ballots printed at public expense, but the Missouri voter is still at liberty to write on his ballot other names than those which may be printed there. The statute recognizes this right by requiring blanks for such writing next the printed names."

In the State of New York a similar statute has been adopted, and the Court of Appeals, in *People ex rel. Bradley* v. *Shaw*, 133 N. Y. 493, in passing on an objection that the relator had not received a proper nomination, among other things said : "The plan contained in sections 1, 2 and 3 of the Ballot Reform act was a provision for the printing of an official ballot at the public expense,—a feature well designed to secure the desired secrecy and independence of the ballot. But that that was in nowise intended to prevent the voter to vote for any candidate whom he chose, is evident from the further provision of the law (sec. 25) that the voter may write or paste upon his ballot the name of any person for whom he desires to vote for any office. Indeed, to hold otherwise would be to disfranchise or to disqualify the citizen as a voter or candidate, and, in my opinion, to affect the law, quite unnecessarily, with the taint of unconstitutionality in such cases."

In conclusion, we are of opinion that the ballots cast for S. H. Sanner were legal ballots, and should have been counted for him, and that the court erred in dismissing the petition.

The judgment will be reversed and the cause remanded, with directions to enter a judgment in favor of petitioner.

*Reversed and remanded.*