## Commonwealth ex rel., Henry C. McCormick, Attorney General, *v.* Frank Reeder, Appellant.

*Constitutional law—Elections—Limited voting.*

The words "shall be entitled to vote at all elections," in sec. 1, art. 8 of the constitution of 1874, are exactly equivalent to the words "shall enjoy the rights of an elector," in sec. 1, art. 3, of the constitution of 1838. Both expressions mean that the citizen shall not be entitled to vote if he does not possess the enumerated qualifications and every of them; but that if he does possess them all, then he is an elector, and entitled to vote as the law may prescribe.

The statutes, decisions and practice under sec. 1, art. 3, of the constitution of 1838, are applicable to questions arising under sec. 1, art. 8, of the constitution of 1874.

Section 5, art. 1, of the constitution of 1874, declaring that "all elections shall be free and equal," means that the voter shall not be physically restrained in the exercise of his right by either civil or military authority; and that every voter shall have the same right as any other voter. It was not intended to prohibit a limited voting plan by which voters are restricted from voting for the whole number of officers of a certain kind.

Under sec. 1, art. 5, of the constitution of 1874, and under sec. 1 of art. 12, the legislature may create a court and enact that no voter shall cast his ballot for more than a certain number less than the whole number of the judgeships to be filled.

Section 15 of art. 5 of the constitution of 1874, providing that judges shall be elected by the qualified electors of "the district over which they are to preside," applies only to the election of district judges of the common pleas.

The provisions in the constitution establishing limited voting in the election of Supreme Court judges, county commissioners, Philadelphia magistrates and inspectors of election, is not an implied prohibition upon the legislature of filling other offices by the same method of voting, on the principle expressio unius est exclusio alterius.

*Constitutional law—Elections—Limited voting—Superior Court—Act of June 24, 1895.*

The provision of the act of June 24, 1895, P. L. 212, establishing the Superior Court, that " no elector may vote, either then or at any subsequent election for more than six candidates upon one ballot for the said. office," is constitutional.

Argued Oct. 15, 1895. Appeal No. 6, May T., 1895, by defendant, from judgment of C. P. Dauphin Co., No. 20, Commonwealth Docket, ordering a mandamus and directing judgment to be entered in favor of plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Mandamus to compel the secretary of the commonwealth to prepare ballots of a particular kind.

The petition of the relator, Henry C. McCormick, attorney general, for mandamus was as follows :

That by an Act entitled "An act to regulate the nomination and election of public officers," etc., approved the 10th day of June, 1893, it is made the duty of the secretary of the commonwealth to prepare forms of all ballots to be cast in the elections for public offices within this commonwealth, and also all other forms made necessary or desirable by the act, and furnish the same to the county commissioners of each county, who are required by the act to procure further copies of the same at the cost of the county and furnish them to the election officers or other persons by whom they are to be used. It is provided in said act that instructions may be printed on such ballots indicating to the voter the number of candidates for whom he may be entitled to vote for any office, and also that there shall be on each of said ballots " as many blank spaces as there are persons to be voted for by each voter for said office," and in the 27th section of said act it is provided that if a voter marks more names than he is entitled to vote for for an office, his ballot shall not be counted for said office, and that " none but ballots printed in accordance with the provisions of the act shall be counted for any purpose."

That at the ensuing general election to be held in November, 1895, there are to be elected seven judges of the superior court in accordance with the provisions of the act of June 24,

1895 (P. L. 212), establishing the said court, but it is, in the first section of the said act, provided that "no elector may vote, either then or at any subsequent election, for more than six candidates upon one ballot for the said office."

That said provision, intended to restrain each elector from voting for more than six when there are seven candidates to be elected, is unconstitutional and void, because in conflict with the provisions of the constitution of Pennsylvania, and particularly with sec. 5 of art. I., which declares that "elections shall be free and equal and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage ;" sec. 1 of art. VIII., which provides that every male citizen twenty-one years of age, possessing certain qualifications, "shall be entitled to vote at all elections," and sec. 15 of art. V., providing for the election of all judges required to be learned in the law, other than judges of the Supreme Court, requiring them to be elected by the qualified electors and prescribing no limitation upon the right of each elector to vote for as many candidates as there are judges to be elected.

That the said provision for limited voting being unconstitutional as aforesaid, the general election to be held in November, 1895, will, if conducted upon that basis and by the use of an official ballot so prepared as to make it impossible for electors to vote for more than six candidates for judge of the Superior Court, so far as concerns the choice of candidates for that office, be invalid, thus requiring a new election to be held to the great cost, damage and detriment of the commonwealth.

That your relator did, upon the 9th day of October, 1895, demand of Frank Reeder, secretary of the commonwealth, at his office in the city of Harrisburg, that in making up the form of the official ballot to be used at the general election in 1895, and in giving instructions and performing the other duties imposed upon him by law in relation to said ballot and the said election, he would, disregarding that provision of the act of June 24, 1895, which declares that "no elector may vote, either then or at any subsequent election, for more than one candidate upon one ballot for the said office," prescribe such form of ballot and give such instructions as will insure to each elector throughout the commonwealth the right and privilege of voting for seven candidates for judges of the superior court, if he shall so desire.

That the said Frank Reeder, secretary of the commonwealth, did, then and there, refuse to comply with the said demand and to prescribe such form of ballot or give such instructions, and did declare that the official ballot and the instructions in relation thereto, as prepared by him, do, so far as candidates for the office of judge of the Superior Court are concerned, limit and restrict each elector to vote for six candidates only, and do not provide or permit that he shall vote for more, but on the contrary, are designed to prevent him from so doing, being prepared in accordance with the aforesaid provision of the act of June 24, 1895, limiting the right of electors in that regard.

That your relator is without other adequate and specific remedy at law, and, therefore prays this honorable court to order a writ of mandamus to be issued forthwith directed to Frank Reeder, secretary of the commonwealth, as aforesaid, commanding him to prepare and send to the county commissioners of each county in the commonwealth such form of ballot and to give such instructions in relation thereto and in all other matters so perform the duties imposed upon him by law in relation to said ballot or the said election as to provide that each qualified elector of this commonwealth, desiring so to do, may, at the next ensuing general election, to be held on Tuesday, the fifth day of November, 1895, as aforesaid, be permitted to vote for seven candidates for the office of judge of the Superior Court, and your relator will ever pray.

For the purpose of obtaining a speedy decision of the question an agreement was entered in the nature of a case stated by which the facts averred in the petition should be taken as true, except in so far as they involved the construction of the portion of the first section of the act of June 24, 1895, P. L. 212, which provided that in the election of the seven judges no elector should vote for more than six candidates.

The case was argued, and SIMONTON, P. J., was of opinion that the provision was unconstitutional, and McPHERSON was of the opinion that it was constitutional.  Both filed opinions. In order, however, that the case might be properly considered by the Supreme Court, McPHERSON, J., formally concurred in the judgment for the commonwealth.

*Error assigned* was entry of judgment in favor of the commonwealth.

*James A. Stranahan*, for appellant.—It is contended that
there is no authority specially conferred by the fifth article of
the constitution for the election of these superior judges, and
their election can only be regulated by law.    The establishment
of this court by law carries with it the power to elect or ap-
point its members.    Under the last clause of sec. 1 of art. V.
this power is given.

But it is claimed on the part of the appellee that the election .
of these judges is controlled by sec. 15 of art. V. of the consti-
tution.    Upon an examination of this section and considering
it with the whole judiciary article and the various sections
referring to the courts, the words " shall be elected by the
qualified electors of the respective districts over which they
are to preside " can only apply to judges elected in districts as
common pleas judges.    It cannot apply to the Superior Court
judges as these are elected by the qualified voters of the state.
The jurisdiction of the superior judges is not confined or lim-
ited to districts, but is coextensive with the state.

But it is contended that this is a limitation upon the consti-
tutional right of the elector, and in violation of sec. 5 of art. I.
and sec. 1 of art. VIII. of the constitution.    It is a sufficient
reply to this argument to say that these sections apply to the
right to vote and not to the method of voting after the right is
determined.    The regulations of the election is left to the dis-
cretion of the legislature, and this discretion of the legislature
cannot be reviewed by any other department of the government
except in a case of plain, palpable and clear abuse of the power
which actually infringes the rights of the electors : See Patter-
son v. Barlow, 60 Pa. 54 ;  Weister v. Hale, 52 Pa. 474.

It is hard to conceive how the limitation of the constitutional
right of the elector is interfered with in this case, when the
constitution expressly recognizes the principle of limited voting,
as it is properly termed.    A legislative construction of this right
has long existed, and has been exercised in this state from 1839.
In the general election law approved July 2, 1839, P. L. 519,
this principle was first introduced in regard to the election of
inspectors of election : Act of April 10, 1867, P. L. 62.

*M. E. Olmsted, John P. Elkin*, deputy attorney general, and
*Henry C. McCormick*, attorney general, with him, for the com-

monwealth.—" Election " as defined in Bouvier's Law Diction-
ary, means " choice, selection, the selection of one man from
amongst more to discharge certain duties in a city, corporation
or society." The right to vote at all elections means clearly
the right to participate in all choices, all selections for offices,
in the selection of the incumbent of every office to be filled.
It has always been so understood: Hays v. Com., 82 Pa. 518.

The elector is not .under obligation to vote for every office
to be filled in that election, nor, where several persons are to
be chosen to the same office, is to be required to vote for as
many as are to be elected. He may vote for one or any greater
number, not to exceed the whole number to be chosen.

Upon the principle contended for by the respondent limited
voting may be extended to all offices.

By the limited vote the elector is practically deprived of
choice as to any of the candidates : Debates Constitutional Con-
vention, vol. 4, p. 344.

On a recent occasion, when in an adjoining state the party
usually in the majority having nominated as one of its can-
didates for a high judicial office a man popularly believed
(whether rightly or wrongly so) to be unfitted for the position,
he was overwhelmingly defeated at the polls, there was fre-
quent quotations of Pierpont's beautiful words to the effect
that the ballot is

> " A weapon that comes down as still
>    As snowflakes fall upon the sod ;
>   But executes a freeman's will,
>    As lightning does the will of God."

But by means of this limited vote, the nominating conven-
tion does the work, the ballot loses its force, the freeman's will
is not executed, the lightning is forbidden to strike.

No constitutional qualification of a voter can be abridged,
added to or altered by legislation : Page v. Allen, 58 Pa. 338.

In McCafferty v. Guyer, 59 Pa. 109, this court held that a
right conferred by the constitution is beyond the reach of legis-
lative interference, and declared unconstitutional an act of as-
sembly attempting to disfranchise persons by reason of their
desertion from the military service.

The right to regulate elections, to provide means for deter-
mining who are and who are not qualified electors, to require

registration, etc., is conceded to the legislature, but if that right is attempted to be exercised in such way as to unreasonably embarrass the voter in the exercise of his constitutional prerogative, the statutes involved have invariably been declared unconstitutional in this and every other state: Blair v. Ridgely, 97 Am. Dec. 264; U. S. v. Slater, 4 Wood, 356; Daggett v. Hudson, 43 Ohio, 548; State v. Constantine, 42 Ohio, 437; Maynard v. Board of Canvassers, 84 Mich. 228.

Under the constitution all judges required to be learned in the law must be elected. The power of appointment or other means of selection is defined except to fill vacancies: Sec. 1, art. XII.; sec. 1, art. V.; 6 Con. Deb. 338; 3 Con. Deb. 732.

The argument that the term "districts" necessarily means subdivisions of the state proves a little too much and must involve a denial of the legislative right to establish any court at all having jurisdiction coextensive with the state. But it is not sound. While the term is, and properly so, applied to subdivisions, it may, with equal propriety, be applied to the whole state; Century Dictionary: " Territory," " District;" Anderson's Law Dict. " Territory."

It is urged that the delegates to the convention itself were selected by limited vote. What does this prove? Theirs was not an office in the ordinary sense of the term. It was not an office recognized by the then existing constitution. No question was raised as to the legality of the election of any delegate. It does not appear that any elector sought to exercise any greater rights than were conferred by the act of 1872 calling the convention: Clothier's Application, 2 Monaghan's Chester C. Rep. 355.

As to the status of jury commissioners now in office or heretofore serving under the act of 1867, and their acts and the consequences resulting therefrom, there is no occasion for uneasiness. Their title to the office can be inquired into only quo warranto at the suggestion of the attorney general: Com. v. Burrell, 7 Pa. 34; Clark v. Com., 29 Pa. 129; State v. Carroll, 38 Conn., 448; Keyser v. McKissan, 2 Rawle, 139; King v. Phila., 154 Pa. 160.

The fact that the constitution provides limited voting for certain offices, excludes it as to all others. Expressio unius exclusio alterius: Chase v. Miller, 41 Pa. 403; Barker v. Peo-

ple, 20 Johns. (N. Y.) 457; District Township v. Dubuque, 7 Clarke, 262; State v. Taylor, 15 Ohio, 137.

The balance of the act is not affected by the unconstitutionality of the provision in question: Fox's App., 112 Pa. 337.

If the people desire to extend the principle of limited voting, it is within their power to do so by amendment to the constitution, but, until such amendment has been submitted for their consideration and suffrage, it is safe to assume that they do not now, and never did, intend that this principle, which was debated in the convention more than any other, and was, in spite of the most earnest and persistent efforts to the contrary, restricted to certain offices, can now be applied by one and withdrawn by the next according to the will of the party in power, thus keeping voters in constant uncertainty as to what their rights are to-day or may be to-morrow. It was never intended that the legislature should enforce what the convention had itself rejected.

OPINION BY MR. JUSTICE DEAN, October 17, 1895 :

The act of June 24, 1895, P. L. 212, provided for the creation of the Superior Court, a court intermediate between the Supreme Court and the courts of common pleas, to be composed of seven judges, to be appointed by the governor, to hold their offices under this appointment until the first Monday of January following: In the meantime, at the general election in November, their successors were to be elected to hold office for the term of ten years from said first Monday of January.

In the first section of the act it is provided that: "No elector may vote, either then, or at any subsequent election, for more than six candidates upon one ballot for the said office. "

The commonwealth alleging this provision of the act to be unconstitutional and void, in that it restricted the right of the voter to cast his ballot for six judges, when seven were to be elected, requested the secretary of the commonwealth, the defendant, to prepare the official ballot under act of June 10, 1893, as indicating seven candidates for the office instead of six as provided in the act. This the secretary refused to do, being of opinion, it was his duty to follow the statute; the plaintiff then applied to the court below for a mandamus to the secretary; on hearing of the application and after argu-

ment by formal decree the mandamus was awarded; the decree was purely formal, however; Judge SIMONTON being of opinion this provision of the act is unconstitutional, favored awarding the writ; Judge McPHERSON was of opinion the provision was constitutional, but for the purpose of speeding final hearing and determination of the question, pro forma, concurred in the decree.  If he had suggested a decree in accordance with his opinion the application would have failed, because of a divided court, but having concurred in the decree suggested by Judge SIMONTON, the secretary brings this appeal from it, and we have the question before us for final determination.

There are seven candidates to be voted for; the legislature has declared no voter shall vote for more than six; in so declaring has it deprived the voter of a constitutional right?  If so, then this provision of the act is void, otherwise not.

A constitutional convention and the legislature are equally representatives of the will of the people.  A written constitution marks only the degree of restraint which, to promote stable government, the people put upon themselves; they resolve in this instrument in substance: We will not do certain things and we will do certain others; and generally in the same instrument any change in the course of government thus marked out is rendered difficult by the formalities and lapse of time which must attend an amendment of it; therefore, changes are infrequent and a reasonable degree of stability is attained.  But whatever the people have not, by their constitution, restrained themselves from doing, they, through their representatives in the legislature, may do.  This latter body represents their will just as completely as a constitutional convention in all matters left open by the written constitution.  Certain grants of power, very specifically set forth, were made by the states to the United States, and these cannot be revoked or disregarded by state legislation; then come the specific restraints imposed by our own constitution upon our own legislature; these must be respected; but in that wide domain not included in either of these boundaries the right of the people through the legislature to enact such laws as they choose, is absolute.  Of the use the people may make of this unrestrained power, it is not the business of the courts to inquire.  We peruse the expressions of their will in the statute; then examine the constitution and

ascertain if this instrument says, "Thou shalt not," and if we find no inhibition, then the statute is the law simply because it is the will of the people and not because it is wise or unwise. As is said by BLACK, C. J., in Sharpless v. The Mayor of Philadelphia, 21 Pa. 147, "The great powers given to the legislature are liable to be abused. But this is inseparable from the nature of human institutions. The wisdom of man has never conceived of a government with power to answer its legitimate ends and at the same time incapable of mischief." So here, even if we concurred with the appellee, which we do not, that approval of the exercise of such a power by the legislature as manifested in this act will naturally lead to abuse of it, that should have no influence in determining the constitutional question; to permit it to control our judgment would be, in effect, to say, that, as the people have by the adoption of this constitution unwisely neglected to restrain themselves in their lawmaking power, we will wisely restrain them now. We have no such opinion; but if we had, we have no such power, and therefore turn to the constitution to ascertain, from that alone, whether the statutory provision is forbidden.

Section 1, art. 8, declares: "Every male citizen, twenty-one years of age . . . . shall be entitled to vote at all elections;" then follow the other qualifications, such as residence and payment of tax. The provision on this same subject in the constitution of 1838, sec. 1, art. 3, reads thus: "In elections by the citizens every white freeman of the age of twenty-one years . . . . shall enjoy the right of an elector." Except that the word "white" is injected, this is almost verbatim the provision on the same subject in the constitution of 1790.

The qualification of the voter in each constitution is specified; his age, sex, residence and payment of taxes. Although a distinction between the words used in the constitution of 1874 and those used in the two older constitutions is sought to be drawn, we can see none between "be entitled to vote at all elections," and "shall enjoy the rights of an elector." Both mean the same thing; he shall not be entitled to vote if he possesses not the enumerated qualifications and every of them; if he do possess them all then he is an elector, and entitled to vote as the law may prescribe. Being an elector, and therefore entitled to vote at all elections, the constitution of 1874,

as well as those which preceded, goes a step further, and in sec. 5, art. 1, declares: " All elections shall be free and equal." That is, the voter shall not be physically restrained in the exercise of his right by either civil or military authority; nor, shall there be inequality; every voter shall have the same right as every other voter. Is there any other provision in the constitution touching the method of the exercise of his right by the qualified voter in voting for the judges of the Superior Court?

Section 1 of art. 5 provides that: " The judicial power of this commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates courts, and in such other courts as the general assembly may from time to time establish."

Under the authority of this last specification, "such other courts as the general assembly may from time to time establish," the Superior Court was created. Nothing is said in the article as to how judges of such courts when established shall be elected. Section 15 of the same article clearly applies to the election of district judges of the common pleas, for they are to be elected by the qualified electors of the respective districts over which they are to preside, while the jurisdiction of the Superior Court judges is limited by no district boundaries. The manner of electing Supreme Court judges is also prescribed in the constitution; but being silent in the judiciary article as to the method of electing the members of the Superior Court, we turn to sec. 1, art. 12, which declares: " All officers whose selection is not provided for in this constitution shall be elected or appointed, as may be directed by law." And so, in pursuance of the authority to create other courts in sec. 1 of art. 5, the court is established, and by the authority of sec. 1, art. 12, the method of election is prescribed.

The constitutionality of the court is not denied by appellee, nor is the right of the legislature to provide for the election of its judges denied; the constitutionality of the method of election alone is in question. As the language of the constitution of 1838, prescribing the qualifications of voters, possesses the same significance as that of 1874, the words " shall enjoy the right of an elector," and "shall be entitled to vote at all elections," meaning the same thing, do they as urged by appellee mean more than they express? Can they, by any reasonable

interpretation, include an absolute right to vote for every candidate of a group of candidates for the same office? Without regard to what the legislature might have done to fill the offices created by the establishment of the Superior Court, whether they might or might not have made the office appointive, all these questions are now unimportant and we pass no opinion upon them; the court is established; the office is made elective to be filled by the candidates elected at the general election. We therefore must treat the case as the legislature has treated it. The question now is as to the interpretation to be put upon the language specifying the qualification of the voter who has by law a right to vote at the election for candidates for this office.

No sound reason has been urged in the argument why we should enlarge the scope of the words "shall be entitled to vote at all elections" by practically adding "also for every candidate of a group of candidates for the same office." The constitution does not so say and has never been interpreted to so mean. Within one year after the adoption of the constitution of 1838, the act of July 2, 1839, became a law. It provided: "Section 4. Each of such qualified citizens shall vote for one person as judge, and also for one person as inspector of elections, and the person having the greatest number of votes for judge shall be publicly declared to be elected judge, and the two persons having the greatest number of votes for inspector, shall in like manner be declared to be elected inspectors of election."

Here was a restriction immediately after the adoption of the constitution; two inspectors are to be elected, yet the qualified voter, who "shall enjoy the right of an elector" is limited to a vote for one. This is more than a mere legislative construction; it is a cotemporaneous interpretation of language by those who lived when the constitution was framed, possibly by some of those who took part in the convention, and certainly by those who had voted at the election at which it was adopted. This interpretation was never questioned. A period of twenty-eight years elapsed when the jury commissioner act of 1867 was passed, providing for the election every three years of two jury commissioners, and limiting the qualified voter to a right to vote for but one. For seven years every verdict in civil and criminal cases in the commonwealth rested on the

twelve jurors whose names were put in the wheel by officers elected under this act. Although the legality of the panel and array of jurors has been disputed in many cases, the constitutionality of the election of those who selected them has never been questioned. Then, in 1872, was passed the act providing for the election of delegates to the constitutional convention which framed the constitution of 1874. Again, the plan of limited voting was provided for and its legality not disputed. We concede that, no matter how irregular may have been the election of the delegates to that convention, the adoption of its work by the direct vote of the people cured all such irregularities and made the constitution the fundamental law of the commonwealth. We cite the act only as evidencing the legislative interpretation of the constitution of 1838.

The convention which framed the constitution of 1874 was composed of eminent men, some of them the ablest lawyers in the state ; the construction put upon the constitution of 1838 was well known to them ; the method of their own election they knew ; can it be presumed for a moment they would have accepted an election to a high office if they had thought it was brought about by unlawful, because unconstitutional, methods ? It thus clearly appears, that the interpretation put upon the language of the constitution by those who lived at the time it was framed and adopted, was the same as that put upon like language in that of 1874 by the legislature of 1895 ; that the interpretation put upon the constitution of 1838 was acquiesced in by the bar, the courts and the legislature for a period of thirty-five years until the adoption of the constitution of 1874. That in two other instances, offices of the highest importance, jury commissioners and delegates to a constitutional convention were by legislative enactment filled on the limited voting plan. In view of this long continued interpretation of our own constitution, we do not think it necessary to discuss the authorities cited from other states. In fact in the case most relied on by the appellee, State against Constantine, 42 Ohio, 437, in which the court arrives at a conclusion different from ours, it is said : " The right of each elector to vote for a candidate for each office to be filled at an election had never been doubted ; " in our state the right of the legislature to limit the vote to a less number than all the officers to be elected has never been

doubted ; as the historical interpretation has been wholly different the conclusions must necessarily be at variance. Hays v. Commonwealth, 82 Pa. 518, turned on another question than is raised here ; viz : whether by application of the cumulative voting plan, a stockholder's election in a railroad corporation chartered under act of 1868 could be controlled. This court held that even the constitution could not take from the stockholder his vested right under the charter to have one vote cast for each officer to be elected.

But, it is argued from the provisions of the constitution establishing limited voting as to certain offices, the maxim expressio unius exclusio est alterius must move the court to the construction contended for by appellee. The application of this maxim depends wholly on the subject of contention ; the expression of one thing often necessarily is, or tends to, the exclusion of others not expressed ; but the induction is not warranted in all cases, and if indiscriminately applied would frequently lead to most erroneous conclusions. Take the case before us : the constitution establishes limited voting in the election of Supreme Court judges, county commissioners, Philadelphia magistrates, and inspectors of election ; therefore, it is argued, the implication is that the plan is excluded in the election of all other officers. But the limited voting plan was recognized and adopted in the constitution because it was deemed wise that as to offices non partisan in character, or which at least should be, the minority party ought to have representation, and this could only be attained by limited voting. Does the expression of this thing necessarily exclude other things not expressed ? As the same reasons for the plan exist as to like offices thereafter created, is it not a necessary deduction that a like plan to that expressed should be followed ? Does not the whole spirit of the constitution plainly so imply, while there is not a word indicating that such plan as to other or new courts is forbidden. In the cases specified the constitution is mandatory ; it says to the legislature in these, enumerating them, thou shalt prescribe the limited voting plan ; in the cases not enumerated but of the same kind it is discretionary.

For the reasons herein stated, as well as for those assigned in the opinion of Judge McPherson, the decree of the court below is reversed and the petition of the attorney general for a mandamus is dismissed at the costs of appellee.

## DISSENTING OPINION BY WILLIAMS, J.:

I cannot concur in this judgment. Some of the reasons that impel me to dissent from it I will state as briefly as I am able. The government of Pennsylvania is in the language of the Declaration of Rights a " Free Government," and rests on the authority of the people. Their authority is exercised and their will expressed by their votes. To protect themselves in the unrestricted exercise of their right to vote at all elections and for all public officers they have declared in the fifth section of the Declaration of Rights that " no power civil or military shall at any time interfere to prevent the free exercise of the right of suffrage." In order to define what they meant by " the right of suffrage " and to regulate the manner of its exercise, they devoted the seventeen sections of the eighth article of the constitution to this subject. In the first of these sections they declare that " every male citizen twenty-one years of age, possessing the following qualifications shall be entitled to vote at all elections." The qualifications that follow relate to citizenship, to residence, and the payment of a tax. These qualifications cannot be changed, increased or diminished by the legislature. This was distinctly asserted by this court in Page et al. v. Allen et al., 58 Pa. 338, in these words : " No constitutional qualification of a voter can be abridged, added to, or altered by legislation." In McCafferty v. Guyer, 59 Pa. 109, a statute passed to disfranchise a deserter from the armies of the Union was held unconstitutional because it added a disqualification not found in the constitution ; and the rule of Page v. Allen, supra, was recognized and restated in these words : " A right conferred by the constitution is beyond the reach of legislative interference." If there were no other provisions upon this subject it would be too clear for serious contention that the people had reserved to themselves the unrestricted right of suffrage, and that the legislature was powerless to deny to any qualified voter the privilege of voting at all elections and for all elective officers, if he desired to exercise it. But some experiments had been made by the legislature with what is called limited voting prior to the calling of the constitutional convention of 1873. These had been made without constitutional authority, to secure minority representation on boards of officers where it was thought the presence of a representative of the minority politi

cal party might tend to a more impartial discharge of the duties devolving on the board, or to increased efficiency. It was thought best to recognize the principle underlying such legislation and to indicate in what cases and to what extent this power to limit a citizen in the exercise of his right of suffrage should thereafter be exercised. These cases are where two judges of the Supreme Court are to be elected at the same time, art. 5, sec. 16; in the election of inspectors of election, art. 8, sec. 14; in the election of county commissioners and county auditors, art. 14, sec. 7, and the election of magistrates in Philadelphia.

These are the only exceptions to the unlimited right to vote at all elections and for all elective officers that the framers of the constitution saw fit, when their attention was fixed upon the subject, to allow. Expressio unius exclusio alterius. It has been suggested that this maxim is not applicable in the interpretation of the constitution, but this court held exactly the opposite in Page v. Allen and Robb v. Barlow, 58 Pa. 338, and the following language was used : " The expression of one thing in the constitution is the exclusion of things not expressed." It was further said in the same case " The inhibitions of the constitution as to legislation are to be regarded as well when they arise by implication as by expression." We are bound by our own precedents and by every rule of interpretation to say in this case that an enumeration of the instances in which the exercise of the right of suffrage shall be limited is equivalent to a distinct denial of the power to limit it in all cases not in the enumeration. But this judgment is not only in violation of the constitution, but it recognizes a power in the legislature to disregard the constitutional safeguards of the right to vote that is far reaching and that might be used to subvert the will of the majority. In many counties of the state two or more, and in the counties of Philadelphia and Allegheny many members of the legislature are elected upon the same general ticket. The right of the voter might with equal propriety be limited to a certain number of these. If the legislature may deny to the voter the right to vote for one, why not for two, or three, or to vote for all but one ? There are counties in the commonwealth where the relative strength of the great political parties is as one to three. Suppose such a

county elects two representatives and each voter is restricted in his right to vote so that he can vote for but one. Then the majority numbering three fourths of all the voters secures the same representation as the minority that numbers but one fourth of the voters. If this judgment is right and the legislature may without constitutional authority deny to every citizen of the commonwealth the right to vote for one of the judges of the superior court, why may not the same thing be done as to associate judges in the counties where those officers still exist? Why not in all judicial districts where two or more judges are elected in the same district? Why not extend the same limitation to school directors, to members of select and common councils in cities, to councilmen in boroughs, to congressmen at large of whom we have two, and even to presidential electors?

But it is said that jury commissioners are elected on the plan of limited voting, and if this judgment should be affirmed the law under which they are elected would fall. I can imagine a greater public calamity than that would be. Suppose it should be held, as but for this judgment I cannot doubt it would be held, that the law under which jury commissioners are elected is unconstitutional, then the duty of selecting and drawing jurors would fall back upon the county commissioners if no other method was provided by law. No serious inconvenience could arise. But meantime, and until the question is regularly raised on quo warranto and decided, it could not be raised on a challenge to the array. The officers will continue to serve until the law is repealed or held to be invalid. But suppose it was inevitable that an affirmance of this judgment would empty every jury wheel in the state. It is better, a thousand times better, that this should happen than that the sacred "right of suffrage" so carefully intrenched by the people in their fundamental law should become the football of party majorities to be limited or restricted as the exigencies of political warfare might seem to require. I would affirm this judgment and uphold the constitutional declaration that "every male citizen twenty-one years of age . . . . shall be entitled to vote at all elections" and, in the language of the Declaration of Rights, I would hold that "no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage" at any election or for any elective officer, except in the instances and to the extent that the constitution has plainly authorized.

STERRETT, C. J., fully concurs in this dissenting opinion.