## CHAMBERLAIN v. HEDGER, *et al.*

1. The board of canvassers being required by Laws 1890, Chap 84, "to open the returns from the various voting precincts," and to sign and certify to such abstracts, in accordance with which it is the auditor's duty to make out certificates of election, they cannot so refuse to do on the ground that persons voted for were were not properly nominated.

2. A board of canvassers and the county auditor cannot be excused from canvassing the returns, and issuing a certificate of election in accordance therewith, on the ground that it would be idle, there having been no nominations as prescribed by law, as the person to whom the certificate of election is issued is clothed with a *prima facie* right to the office.

(Opinion filed September 2, 1899.)

Appeal from circuit court, Brown county. Hon. A. W CAMPBELL, Judge.

Mandamus proceedings by John Chamberlain against Frank C. Hedger and others, county board of canvassers, and Frank C. Hedger, county auditor, of Brown county to compel the canvass of the returns of an election. Judgment for defendants. Plaintiff appeals. Reversed.

The facts are stated in the opinion.

*S. H. Cranmer* for appellant.

*George C. Jenkins* and *Albert Gunderson,* for respondent Martin Boardman. *J. H. Hauser,* for respondents Hedger, Alley, and Wood.

HANEY, J. This proceeding was commenced to compel defendants to canvass the returns of an election held in the First commissioner district of Brown county November 5, 1895, when it is claimed plaintiff was elected county commissioner. The issues raised by an alternative writ of mandamus and answer were tried by the court, and judgment rendered for defendants.

Notice of an election to be held throughout Brown county, November 5, 1895, for the purpose of voting on the issuance of bonds to build a court house, and in the precincts of the First commissioner district for the purpose of electing a commissioner, was duly given. No nominations of candidates for the office of commissioner having been filed with the auditor within the time prescribed by law, the official ballots were distributed, without containing the names of any candidates for that office. Notwithstanding this condition of the ballots, the precinct returns from the First district show that votes were cast for the office, of which plaintiff received the highest number. Defendants, who constituted the county board of canvassers for such

election, refused to make an abstract of the votes for commissioner as shown by the precinct returns, and the auditor refused to issue a certificate of election to plaintiff.

The precinct returns conform to the requirements of the statute then in force. It was the duty of defendants to open the returns from these voting precincts, and make abstracts of the votes as they appeared thereon; and it was the auditor's duty to make out a certificate of election to each person having the highest number of votes for any county office, as shown thereby. Laws 1890, Chap. 84. The duties of a board of county canvassers, under our election law, are purely ministerial. The board is required "to open the returns from the various voting precincts in said county, and make abstracts of the votes." Laws 1890, Chap. 84 § 1. Such board is vested with no authority to take evidence upon, hear, or determine any question before it relative to the validity or regularity of any election, or as to the qualification of any voter who may have voted, or the eligibility or noneligibility of any candidate voted for. Its duty is "to open the returns, and make abstracts of the votes" appearing in the returns, and to sign and certify to such abstract. The poll book and tally sheet, with the entries therein provided for, and which have been sealed and forwarded by the judges of election to the clerk or auditor, are the only documents the law permits the county canvassers to examine, and they are the only documents that should control or govern them in their action. If the returns provided by law appear to be genuine, the canvassers' duties are to count and canvass them, ascertain from them the number of votes given to the various candidates, and certify that result. Questions of the regularity of the election, qualification of the vot-

ers, eligibility of candidates, fraud in the election, etc., are exclusively for the courts, in proper proceedings, and are not matters which boards of canvassers have any authority to hear or determine. They are not made a judicial tribunal, nor authorized to decide upon the validity of the election in any other mode than by examination of the returns made to them according to law. They are not required or authorized to hear witnesses or weigh evidence. They have no power to send for persons or papers. If one result appears upon the returns, and another is the real truth of the case, they can only act upon the former. Smith v. Lawrence, 2 S. D. 185, 49 N. W. 7. Defendants were not authorized to consider whether or not plaintiff was duly nominated, nor were they authorized to consider the condition of the official ballots when distributed. They could only perform the merely ministerial duty of abstracting the votes as they appeared upon the face of the returns. This they should have been compelled to perform. Smith v. Lawrence, supra.

It is contended that plaintiff could not be legally elected without having been duly nominated, and that the court should not have required the performance of an idle act. The contention is untenable. If the canvass had been made, and the certificate of election issued, plaintiff would have been clothed with a prima facie right to the office, and this was a substantial right, of which he should not have been deprived by the failure of defendants to perform their official duties. It is therefore unnecessary to determine whether, under the statutes then in force, a person could have been elected to a county office without having been nominated in the manner prescribed by law.

If it shall appear when this proceeding reaches the circuit court that the issuance of a peremptory writ will, because of the

expiration of plaintiff's term produce no substantial results, that court can make such disposition of the matter as shall be proper under the circumstances then existing. Its judgment is reversed, and a new trial is ordered.