## CHAMBERLAIN v. WOOD, *et al.*

1. Const. Art. 6, § 19, provides that elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage. Article 7, § 1, provides what shall constitute the qualifications of an elector, and declares that one possessing these qualifications shall be deemed a qualified elector at such election. The constitution makes no further provision as to the exercise of the right of suffrage. *Held*, that the legislature was not inhibited by the constitution from passing an election law re-

quiring the names of all candidates to be certified by law, and printed on an official ballot, thus, in effect, denying to electors the right of writing on the official ballot the name of a candidate whose name has not been properly certified.

2. Where in an action for damages against the board of county commissioners for refusing to canvass a vote, by reason whereof plaintiff was deprived of an office to which he claimed to have been elected, plaintiff failed to show that he was legally elected, a demurrer to the complaint was properly sustained.

FULLER, P. J., dissenting.

(Opinion filed November 20, 1901.)

Appeal from circuit court, Brown county. HON. E. G. SMITH, Judge.

Action by John Chamberlain against George D. Wood and others to recover damages for unlawful deprivation of office. From an order sustaining a demurrer to plaintiff's complaint, he appeals. Affirmed.

*S. H. Cranmer,* for appellant.

This constitutional prerogative carries with it the authority for the elector to write on his ballot the name of any person for whom he desires to vote if such name is not found printed thereon. Webster's Definition of Elector; Sanner v. Patton, 40 N. E. 290; People v. Shaw, 31 N. E. 512; Bowers v. Smith, 17 S. W. 761; State v. Dillon, 14 So. 383.

The duty imposed upon canvassing board is a ministerial duty pure and simple. No one derives any benefit from the discharge of this duty except the persons elected. No one can be injured by a refusal of the canvassing board to act except the persons elected. Mechem on Public Officers, Sec. 672, Sec. 643; 1 Sutherland on Damages, 55; Lacour v. Mayor, 3 Deur 406; Lloyd v. Mayor, 5 N. Y. 369; City v. Mulford, 2 Dutch (N. J.) 56; Rochester White Lead Co. v. Rochester, 3 N. Y. 463; State v. Ruth 9 S. D. 84; 2

Thompson on Negligence, 815, 818, 825 and 827. A suit for damages for failure to perform this duty will therefore tie. Chamberlain·v. Hedger, 80 N. W. 178; Smith v. Lawrence, 49 N. W. 7; Mechem Pub. Eff. 658,·725; Winn v. Hill, 67 Mich, 43; Paynesford v. Phelps, 43 Mich. 342.

No brief filed or appearance made for respondent.

CORSON, J. This is an appeal from an order sustaining a demurrer to plaintiff's complaint. The appeal has been dismissed as to ·the defendants George D. Wood and F. C. Hedger, leaving the defendant E. H. Alley the only respondent. The action was brought by the plaintiff to recover of the defendants damages for unlawfully depriving him of the office of county commissioner of Brown county. It is alleged in the complaint that in 1895-96 the defendants Wood and Alley were members of the board of county commissioners of Brown county, and that the defendant Hedger was acting county auditor of said county; that the defendant constituted the board of canvassers of said county; that in November, 1895, an election was held in the various voting precincts within the First commissioner district in said county for the purpose of electing a county commissioner for said district for the term commencing January, 1896; that no certificate of any person as a candidate for the office of county commissioner of said county was filed in the office of the county auditor of said county 20 days prior to the election; that at said election the qualified electors of said First commissioner district of said county cast their ballots for this plaintiff and others for the said office of county commissioner by writing upon the official ballot used at said election the following words and characters, to-wit, "For County Commissioner for First Commissioner District," followed by the name of the candidate or the person for whom such elector

desired to vote, and by making a cross at the left of the name of such person so written upon said ballots. The complaint then proceeds to allege that the said board refused to canvass the said vote so cast for commissioner for the First district, and that by reason thereof the plaintiff was deprived of the office to which he claimed to have been elected, and that he suffered damages thereby to the amount of $564, and demanded judgment against said defendants for the said amount. To this complaint the defendants interposed a demurrer on the ground that the said complaint did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the trial court, and hence this appeal.

It will be observed that the complaint distinctly states that no certificate of nomination of the plaintiff for the office of county commissioner was filed in the office of the county auditor within the time prescribed by law, and that the method of voting for said plaintiff as county commissioner was by writing his name upon the official ballots used at said election, and by making a cross at the left of his name upon the said ballots. While the trial court has not stated the ground upon which the demurrer was sustained, it seems to be assumed by the appellant and we may presume that it was made upon the ground that as no certificate of the nomination of the appellant was filed in the office of the county auditor 20 days before the election, and, as his name was not printed on the official ballot, he was not legally a candidate, and that the votes cast for him by writing the description of the office, his name thereunder, and a cross at the left thereof, was not a compliance with the statute, and he was not, therefore, legally elected to the office. It is contended on the part of the appellant that, notwithstanding no certificate of election was filed as required by law, the voters of that district had the legal right to write the designation of the office and the plaintiff's name there-

under upon the official ballot, and that he, having received a majority of the votes so cast at said election, was legally entitled to the office, and that by reason of the failure of the defendants to properly canvass the votes so cast for the plaintiff he is entitled to recover the damages he sustained thereby. An important question is therefore presented for the determination of this court, namely, can a person be voted for and elected to an office under the laws of this state, who has not filed a certificate of his nomination in the proper office within the time prescribed by law, and whose name is not printed as a candidate upon the official ballots? Under what is known as the "Australian Ballot Law," enacted by the legislature of this state, and in force at the time of the election set out in the complaint, it is provided that an official ballot shall be printed at the expense of the county, upon which the names of all candidates for office, who have properly filed certificates of nomination, shall be printed, and the elector is authorized to indicate his choice for such candidate as he may desire to vote for by making a cross at the head of the party ticket or at the left of the name of the candidate for whom he desires to vote. No provision is made in the law, as it stood in 1895, for writing the name of any person upon the ballot. This court has held in a number of cases, beginning with Vallier v. Brakke, 7 S. D. 343, 64 N. W. 180, that the writing of a name upon the official ballot invalidated the same. In Parmley v. Healey, 7 S. D. 401, 64 N. W. 186, this court, speaking by Mr. Justice FULLER, says, "And, moreover, the writing of a name upon a ticket identifies the voter, and invalidates the entire ballot, and subjects the one who places it there to a criminal prosecution." The appellant contends, however, that under the constitution of this state an elector has the right at any election to vote for any person for an office he may desire, and that the act of the legislature, if it is to be so construed as to deprive

the elector of the right to write the name of the candidate for whom he desires to vote upon the official ballot, is unconstitutional. The right of suffrage is not a natural or civil right, but a privilege conferred upon the person by the constitution and the laws of the state. Judge COOLEY, in his work on Constitutional Limitations, says, Participation in the elective franchise is a privilege, rather than a right, and it is granted or denied upon grounds of general policy." Cooley, Const. Lim. (6th Ed.) 752. In People v. Barber, 48 Hun, 198, the supreme court of New York says: "The elective suffrage is not a natural right of the citizen. It is a franchise dependent upon the law by which it must be conferred to permit its exercise. * * * It is a political right, to be given or withheld at the pleasure of the lawmaking power of the sovereignty." 10 Am. & Eng. Enc. Law 2nd Ed.) 568. The question, therefore, as to what right an elector has in this state, must be determined by an examination of its constitution and laws. It is scarcely necessary to repeat what has been frequently said by this court, that, presumptively, the law enacted by the legislature is valid, and it must be so held unless it is clearly in conflict with or repugnant to some express provision of the constitution, or the legislature has been expressly inhibited by the constitution from enacting the same. Mr. Cooley, in his work above stated, in speaking of this question, says: "The rule upon this subject appears to be that, except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. * * * The judiciary can only arrest the execution of the statute when it conflicts with the constitution. * * * Any legislative act which does not encroach upon the powers apportioned to the other departments of the government being *prima facie* valid, must be enforced, unless restrictions upon the legislative au-

thority can be pointed out in the constitution, and the case shown to come within them." Cooley, Const. Lim. 201, 202.

With these preliminary observations, we will examine the provisions of the constitution of this state that bear upon the question of the right of suffrage. Section 19, Art. 6, of the Constitution, provides, "Elections shall be free and equal, and no power civil or military shall at any time interfere to prevent the free exercise of the right of suffrage." Under these provisions the elector cannot legally be physically restrained in the exercise of his right by either civil or military authority; nor can there be inequality, and every voter shall have the same right as every other voter. Certainly, under the laws we are considering, all electors are vested with the same rights, namely, the rights of appearing at an election and voting in the manner prescribed by law. Section 1, Art. 7, provides what shall constitute the qualifications of an elector, and one possessing these qualifications it is declared "shall be deemed a qualified elector at such election." It will be noticed that in neither of these sections is it provided when, how, where, or under what conditions the elector shall exercise the right of suffrage. The framers of the constitution seem to have designedly left the right of suffrage at this point to be regulated and governed by such laws as the legislature might deem proper to enact. The constitutional convention and the legislature are equally the representatives of the people, and the written constitution marks only the degree of restraint which, to promote stable government, the people impose upon themselves; but whatever the people have not, by their constitution, restrained themselves from doing, they, through their representatives in the legislature, may do. The legislature, just as completely as a constitutional convention, represents the will of the people in all matters left open by the constitution. Com. v. Reeder, 171 Pa. 505, 33 Atl. 67, 33 L. R.

A. 141. Unless, therefore the legislature is inhibited from enacting the law we are considering, it is as much the will of the people as though expressed in the constitution. Let us ask, therefore, what provision is there in the constitution inhibiting the lawmaking power from providing when, how, and under what regulations and conditions the elector may exercise the right of suffrage? The constitution has not, - as we have seen, prescribed any conditions or rules governing the exercise of the right; nor has it inhibited the legislature from prescribing such rules, regulations, and conditions as it might deem proper and for the public interests. The lawmaking power has taken the elector at the point where the constitution has left him, and has provided when, in what manner, and under what restrictions he may exercise the right of suffrage, and in so doing has provided: First, that he must exercise that right by using an official ballot: second, that he must designate in the manner specified his choice of candidates whose names are upon the official ballot, and whose names can only be placed there by a compliance with the law ; third, it has, in effect, denied to the elector the right to write the name of a candidate for whom he desires to vote upon the official ballot, or otherwise deface the same, by declaring that "no elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him." The law, in form, applies equally to all electors without discrimination, and one elector therefore possesses all of the rights, and no more, of every other elector. The legislature, therefore, having in effect limited the right of the elector to voting for candidates whose names are printed on the official ballots, he can only exercise the right in the manner prescribed. But the elector is not thereby necessarily deprived of the right of suffrage, as he has the same right as any other elector to secure the printing of the name of his candi-

date upon the official ballot in the manner prescribed by law, namely, by nomination of some political party, or by securing the signatures of 20 electors, in the case of a county office, to a certificate. This may occasion the elector some inconvenience and labor, but these constitute no objection to the law. In fact, the law requires many acts to be done by the elector not required under former laws, but these requirements have been generally held to be constitutional. We see no reason why the law as laid down by the courts in regard to those requirements should not be applicable to this case.

The supreme court of Pennsylvania, in Com. v. Reeder, *supra,* has recently decided an important constitutional question very much in point in the case at bar. ·A·law was enacted by the legislature of that state for the election of seven judges of the superior court, which provided that no elector should be permitted to vote for any number exceeding six of the judges to be so elected. It was contended by certain electors that this act was unconstitutional in that it deprived the electors of the right given them by the constitution to vote for the entire seven judges. But the court held against this contention, and that the law was constitutional. The court in a very able opinion discussed the constitutional question at length, and in the course of the opinion, in speaking of the will of the people as expressed in the act of the legislature, says: "We peruse the expression of their will in ·the statute, then examine the constitution, and ascertain if this instrument says 'Thou shalt not,' and, if we find no inhibition, then the statute is the law simply because it is the will of the people, and not because it is wise or unwise." In speaking of one possessed of all the qualifications of an elector, the court says, "Then he is an elector, and entitled to vote as the law may prescribe. Being an elector, and therefore entitled to vote at all elections, the constitution of 1874, as well as those which preceded, goes a step

further, and in Section 5, Art. I, declares, 'All elections shall be free and equal;' that is, the voter shall not be physically restrained in the exercise of his right by either civil or military authority. Nor shall there be inequality. Every voter shall have the same right as every other voter." And the court further on in the opinion says: "Can they [constitutional provisions], by any reasonable interpretation, include an absolute right to vote for every candidate of the group of candidates for the same office? * * * The question now is as to the interpretation to be put upon the language specifying the qualifications of the voter who has by law a right to vote at the election for the candidates for this office. No sound reason has been urged in the argument why we should enlarge the scope of the words 'shall be entitled to vote at all elections' by practically adding, 'also for every candidate of a group of candidates for the same office.' The constitution does not so say and has never been interpreted to so mean." It will be seen that the court in this case goes much further than we are required to go in the case at bar. There the elector was limited by the law to voting for six candidates out of the seven, and it was conceded that, if limited to six, he might be limited to a less number; and the court sustained the act of the legislature for the reason that it was not inhibited by the constitution from enacting the same. In the case at bar, as we have seen, no elector is deprived of his right to vote for the candidate of his choice, but, in order to exercise the right, he must see that the name of his candidate is upon the official ballot. We do not feel called upon to give the consti-tion of this state a forced or strained construction in order to defeat a law so beneficial to the people of this state, and so well calculated to prevent fraud, bribery, and corruption at our elections. To con-strue the constitution as giving the right to the elector to write upon the official ballot the name of any candidate, and to deny to the leg-

islature the right to prescribe upon what conditions the elector may exercise the right of suffrage, would in effect, destroy the more important features of our election law in securing the purity of elections and preventing the fraud, bribery, and corruption at elections existing under the former system; for, if the elector may write the name of a candidate upon the official ballot, this necessarily would constitute a "distinguishing mark" and eliminate from our system the secrecy intended, and thereby enable bribery at elections to be carried on with safety. A candidate desiring to purchase a number of votes could easily arrange with the voters, as proof that they had complied with the contract on their part, to write on the official ballot the name of John Jones, or any other person agreed upon for the purpose, for some minor office. An examination of the ballots would at once show whether or not the voters had carried out their contract. Again, one of the most important features of the election law is the one requiring the names of all candidates to be certified as required by law, and printed upon the official ballot, thus enabling the public to investigate the moral character and qualifications of the candidate for the office to which he aspires, and enable the voters to use such efforts as may be necessary to defeat a dishonest or incompetent candidate. Upon a careful consideration of the question, we are clearly of the opinion that the constitution has not inhibited the legislature from requiring the names of all candidates for office in this state to be printed upon the official ballot, and, in effect, denying to electors the right of writing upon the official ballot the name of any candidate.

The right claimed is, for all practical purposes, a mere theoretical or abstract right. This is apparent from the fact that, though the election law of this state has been in effect for more than ten years, this is the first case, so far as the records of this

court disclose, in which the right has been claimed; and in this case it appears from the record that the plaintiff had obtained the proper certificate, but through some inadvertance it was filed with the auditor one day too late, hence his name was omitted as a candidate from the official ballot. We have not overlooked the cases of Sanner v. Patton (Ill. Sup.), 40 N. E. 290; People v. Shaw (N. Y. App.), 31 N. E. 512, 16 L. R. A. 606; Bowers v. Smith (Mo. Sup.), 17 S. W. 761; State v. Dillon (Fla.), 14 South. 383, 22 L. R. A. 124, cited by counsel for appellant in support of his contention. But in neither of these cases, except the one cited from Florida, was the constitutional question we have been considering involved, and the only question before the court in each of those cases was whether or not the law under consideration authorized the writing of the name of the candidate upon the official ballot. The comments of the judges, therefore, upon the constitutionality of the law, were dicta, simply, and not binding upon the court in which the decisions were rendered, and are entitled to very little weight in this court. In the Florida case the supreme court of Florida seems to have held that part of the law we are considering unconstitutional, but the decision of that question does not appear to have been required in that case.

We do not deem it necessary to consider on this appeal the question as to the liability of the defendants to respond in damages, assuming that the plaintiff had been legally elected, and therefore express no opinion upon that question. It is clear, however, that had the proof entitled him to recover, he must, in any event, show that he was legally elected. Having failed to do this, the complaint fails to state any cause of action, and the demurrer was properly sustained, and the order sustaining the same must be affirmed.

The decision of this court in the mandamus proceedings be-

tween the same parties, reported in 12 S. D. 135, 80 N. W. 178, does not in any manner affect the case at bar.

The order of the circuit court, appealed from, is affirmed.

FULLER, P. J. (Dissenting.)   In Chamberlain v. Hedger, 12 S. D. 135, 80 N. W. 178, all the probative facts alleged in this complaint were before the court, and it was squarely held to be the legal duty of respondents not only to canvass all votes returned for appellant at this election, but to issue a certificate in accordance with the result ascertained.   If the power lies within the legislature of a state to deprive qualified electors of the right to freely express their choice as to whom they will designate governmental authority, then the sovereignty of the nation no longer resides in the people of the nation, and this court idly trifled with a serious matter when it said, concerning the identical facts now before us, that, "If the canvass had been made, and the certificate of election issued, plaintiff would have been clothed with a prima facie right to the office; and this was a substantial right, of which he should not have been deprived by the failure of defendants to perform their official duties." In Parmly v. Healy, 7 S. D. 401, 64 N. W. 186, no constitutional question being even mooted, we could do no less than say, in effect, that the statute prohibited the writing of a name on a ticket, and provided punishment for the dismantled freeman who placed it there.   The constitution guarantees to every qualified elector "the free exercise of the right of suffrage"; and, while the legislature cannot limit him to names printed on the official ballot, this court, by fallacious reasoning, has now taken away this right to vote for the person of his choice.   Quoting from our constitution the provision that "elections shall be free and equal, and no power civil or military shall at any time interfere to prevent the free exercise of the right of suffrage," the writer of the majority opinion pro-

ceeds to elucidate by saying that "there can be no inequality, and every voter shall have the same right as every other voter, namely, the right of appearing at an election and voting in the manner prescribed by law." Until all men are viewed in exactly the same light, and the preference of one becomes the preference of all, it will be neither plausible nor reasonable to say that the right of suffrage can be freely, equally, and independently exercised under a statute which merely gives to qualified electors an option to vote for persons whose names are printed on the official ballot, or not to vote at all; and such is not, and under our system of government can never be the law. It is manifestly absurd to hold that the elector, who is thus deprived of his privilege of choosing a public servant, stands on equal footing with those who find upon the official ballot the name of every candidate for whom they choose to vote. It is the constitutional prerogative of every qualified elector, who has complied with all preliminary statutory regulations as to registration, etc., to vote for whomsoever he may choose; and statutes which deprive him of such right have been, so far as my research extends, invariably held for naught in every jurisdiction with the exception of this. Daggett v. Hudson, 43 Ohio St. 548, 3 N. E. 538, 54 Am. St. Rep. 832; Maynard v. Board of Canvassers, 84 Mich. 228, 47 N. W. 756, 11 L. R. A. 332; Monroe v. Collins, 17 Ohio St. 665; Eaton v. Brown, 96 Cal. 371, 31 Pac. 250, 17 L. R. A. 697, 31 Am. St. Rep. 225. The case of Com. v. Reeder, 171 Pa. 505, 33 Atl. 67, 33 L. R. A. 141, upon which the opinion of my associates appears to be based, is clearly not in point. The question there was whether, under a constitution providing for the election of judges "by the qualified electors of the district over which they are to preside," the legislature may "enact that no voter shall cast his ballot for more than a certain number less than the whole

number of judgeships to be filled." Unlike our statute, it is further provided that the ballot to be used shall "contain as many spaces as there are persons to be voted for by each voter for said office;" thus expressly authorizing the writing of names thereon. Moreover, there was an able dissenting opinion by Mr. Justice WILLIAMS; and, directly at variance with the majority opinion in Pennsylvania, it was held unanimously in Ohio that even such statutes are unconstitutional. State v. Constantine, 42 Ohio St. 437, 51 Am Rep. 833.

Identically the same feature of the Australian ballot system as perverted by legislative enactment was recently, with other less important questions, before the supreme court of Florida in such a manner that a determination of the exact point was vitally essential to the decision, and the court say: "The distinguishing theory of the ballot system is that every voter shall be permitted to vote for whom he pleases, and that no one else shall be in a position to know for whom he has voted, unless the voter shall, of his own free will, inform him. There is no doubt in our minds about the right of the legislature to prescribe an official ballot, and to prohibit the use of any other; and the provisions of the act in reference to printing the names of candidates regularly nominated by a convention, mass meeting, or primary election, or who run as independents, are valid. But the legislature cannot, in our judgment, restrict an elector to voting for some one of the candidates whose names have been printed upon the official ballot. He must be left free to vote for whom he pleases, and the constitution has guaranteed to him this right. If the legislature can restrict the voter to some candidate whose name is printed on the official ballot, then it may prescribe such regulations for getting the names of candidates on the ballot as will completely destroy the liberty of choice. * * *

We have considered the cases cited on this point, and recognize fully the rule that every presumption is in favor of the constitutionality of the law, and that it will require a very clear case to justify a court in striking it down on the ground of unconstitutionality. It is also true that, where an act is fairly susceptible of two constructions, one of which conflicts, while the other is in harmony, with the constitution, that construction which supports will be preferred to that which destroys the law. * * * It was entirely competent for the legislature to prescribe the regulations here referred to, and, if there were no others on the subject of casting the ballot, we think the voter, although confined to the use of the official ballot, could put upon it the name of any person in lieu of the name of the candidate printed thereon, and such a ballot would be legal. There is in the provisions here referred to no denial, express or implied, of his right to do so, and under the decisions cited we think he would have such right. But in another portion of the same section of the act, in providing for the entrance of the voter into the polling place, and the receipt by him of an official ballot, it is enacted that 'he shall go to one of the voting shelves, tables or compartments, and there privately cross or check-mark across the dash, or short line in front of the name of the candidate of his choice for each office to be filled, which cross or check-mark shall constitute his vote.' The requirement is that he shall check the name of the candidate of his choice. The candidate here referred to cannot fairly or naturally mean any other than some candidate whose name had gotten on the ballot in the manner provided in the act. This is the only fair and reasonable construction to be put upon the clause mentioned, and its effect is to restrict the voter to a choice of candidates printed on the ballot, which we have said cannot be done. That phase of the act, then, which restricts the voter to checking

the name of some candidate on the official ballot, is in conflict with
the constitutional provision in reference to voting by ballot." State
v. Dillon (Fla.), 14 South. 383, 22 L. R. A. 124. In Sanner v.
Patton, 155 Ill. 553, 40 N. E. 290, that court, while holding that
names written on the official ballot should be counted by the can-
vassers, goes further, and characterizes such voting as legally author-
ized by statute. Consonant with our opinion, based upon the stat-
ute under consideration, it was there contended, in support of the
judgment appealed from, that the name of a person for whom the
voter desires to cast a ballot could not be written upon the official
ballot, and in reversing such judgment the following language is
very properly employed: "It is also said that ample provision has
been made in the act whereby candidates may be nominated, and
thus be entitled to have their names placed on the ticket, and that it ·
is the intention of the act that no vote should be cast for a person
who was not nominated. If such was the intention, why did not
the legislature say so, and why did it say directly the contrary?
What, it may be asked, is there so sacred in the nomination of a
candidate for office by a political caucus that a voter should be com-
pelled to vote for a nominee of the caucus, or else be deprived of the
elective franchise? Under section 1, art. 7, of our constitution,
every male citizen of the United States above the age of twenty-
one years, who has resided in the state one year, in the county ninety
days, and in the election district thirty days next preceding any elec-
tion, is entitled to vote at such election. To exercise this right there
is one exception, and but one, so far as we have been able to find;
and that is found in section 7 of the same article, which declares
that the general assembly shall pass laws excluding from the rights
of suffrage persons convicted of infamous crimes. Adopting the
well-known maxim or rule of construction that the expression of

one thing is to be regarded as the exclusion of another, the legislature does not possess the power to take away from a resident citizen the right of suffrage unless he has been convicted of an infamous crime. Nor can the legislature do indirectly what they cannot do directly; and yet, if the construction contended for by appellee be the correct one, the voter is deprived of the constitutional right of suffrage. He is deprived of the right of exercising his own choice, and when this right is taken away there is nothing left worthy of the name of the right of suffrage; the boasted free ballot becomes a delusion." To the same effect are the following cases: People v. Shaw (N. Y. App.), 31 N. E. 512, 16 L. R. A. 606; Bowers v. Smith ( Mo. Sup.), 17 S. W. 761. At page 587, 10 Am. & Eng. Enc. Law (2d Ed.), the author of the article on "Elections", in discussing the different provisions of the Australian ballot system as adopted in many of the states, says: "Thus they are not unconstitutional because they provide for legal nominations and require them to be made in a certain way in order to entitle a candidate to have his name printed on the official ballot, provided the voter is allowed by writing on the ballot to vote for others than those nominated, if he sees fit. But, as the constitutions guaranty to voters the right to vote for whom they please, a law restricting the right to vote to those candidates whose names appear on the official ballot is to that extent unconstitutional." That eminent author, Judge McCrary, who, as a member of the house of representatives, was for many years chairman of the committee of elections, thus announces the universal doctrine: "The statutes of most of the states expressly permit the voter to cast his ballot for the person of his choice for office, whether the name of the person he desires to vote for appears upon the printed ballot or not. Statutes which deny the voter this privilege are in conflict with the constitutional

provision guarantying the right of suffrage to every citizen possessing the requisite qualifications, and are void. Legislatures may provide for the printing of an official ballot, and prohibit the use of any other, but they cannot restrict the elector in his choice of candidates, nor prohibit him from voting for any other than those whose names appear on the official ballot." McCrary, Elect. § 700. I am confident that the proposition will be taken for granted that the limitation of the voter to names printed on the official ballot deprives him of that secrecy and independence secured by the statute as originally adopted, and that the present amendatory system is unconstitutional in so far as it deprives him of the right to vote for the candidate of his choice.

The order sustaining the demurrer ought to be reversed.